## 39534. BROWN et al. v. THE STATE.

Clarke, Justice.

Fred (Freddie) and Edward (Eddie) Brown, two brothers age seventeen and sixteen respectively, were convicted of the murder of Michael Thigpen and sentenced to life imprisonment. Freddie was also sentenced to ten years for aggravated assault, to run concurrently with the life sentence.

Freddie and Eddie, along with a younger brother and a friend, Chris Byrd, attended a high school graduation party on Lake Sinclair. The party was given by the victim at his family's cabin and was attended primarily by young people from a Hancock County high school which has been described as a rival of the school attended by the Browns. Although there is contradictory evidence as to whether the Browns "crashed" the party or attended as invited guests, there is

evidence that they were welcomed and began to participate in the activities once they arrived at the Thigpen cabin. Sometime later, perhaps as much as an hour and a half, they joined some others on a dock and got into a boat. Freddie stepped on someone's foot, and when his apology was insufficient, a fight broke out, and he and Eddie were beaten up. They fled in their car, and Chris Byrd quickly left in his truck. There was testimony that as they were leaving, some of the other boys were kicking and pounding on the Brown car and smashed the windshield of the Byrd truck.

The Browns headed back toward Milledgeville, making several stops before reaching home. They stopped at William Garrett's Jiffy Mart. Garrett testified that Freddie talked of returning to the party. At the Jiffy Mart they encountered another friend, who took them to his home. They cleaned up their wounds and were given something to eat. After several more stops they arrived home between 11:30 p.m. and 11:45 p.m.

According to the testimony of both boys, they realized at some point that Eddie's expensive boots were missing and decided to return for them. They took along a .12 gauge shotgun and several shells. They testified that they feared a repetition of the earlier fight and took the shotgun for protection, planning to fire it in the air if necessary. It was shown at trial that the boots were not at the dock but were in the back of Chris Byrd's truck.

On the road back to the Thigpen cabin, the boys encountered a vehicle driven by Wayne McGee coming from the direction of the cabin. They stopped McGee, who testified that Eddie pointed the shotgun at him while Freddie said "shoot him." Eddie and Freddie testified that the shotgun was not pointed at McGee but was leaning out the window. McGee was asked who was still left at the party. He then drove away and the Browns drove on to the cabin. This incident formed the basis of the aggravated assault charge against Freddie. Eddie was not tried for aggravated assault.

Before they reached the cabin Freddie put a shell in the shotgun. They testified that they intended to park and sneak down to the dock to look for the boots. Instead, words were exchanged with the boys in the cabin and Michael Thigpen came out. Freddie testified that by this time he had the gun in his hands and one foot out of the car. He alleged that Thigpen came at him in the dark and that in the ensuing struggle, as he tried to get himself and the gun back in the car, the gun went off. A witness who was a few feet behind Thigpen testified that he was shot from the car at a distance of approximately five yards.

The Browns left the scene immediately and went home, where they were soon picked up by a sheriff's deputy. They were taken to the sheriff's office without their parents' knowledge, and questioned.

They gave statements which were ruled inadmissible following a Jackson v. Denno hearing. They bring this appeal from their conviction for murder and Freddie's conviction for aggravated assault.

We reverse the conviction for murder of Fred Berry Brown and grant a new trial as to this defendant. We reverse the conviction of Edward Thomas Brown for murder because there was insufficient evidence to prove that he was a party to the crime of murder. We affirm the conviction of Freddie Brown as to the aggravated assault on Wayne McGee, finding that there was sufficient evidence to satisfy the requirement of Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Appellants have raised twenty enumerations of error. While not abandoning the other enumerations, counsel emphasized four at the oral argument on the appeal. These were (1) error in not granting a defense motion for mistrial following the district attorney's reference during his opening remarks to statements given by defendants which were later ruled inadmissible; (2) error in the admission of a photograph taken after autopsy; (3) error in denying a motion for directed verdict on the basis that the state failed to prove venue beyond a reasonable doubt; (4) error in permitting the state to attempt to impeach its own witness, Chris Byrd.

1. In addition to the four trial errors specifically argued, counsel for appellants contend that as to Eddie Brown the evidence does not show the requisite intent to sustain a conviction. We agree. Under the test set forth in Jackson v. Virginia, supra, a rational trier of fact could not find evidence of every element of the crime of murder beyond a reasonable doubt. Presence at the scene of a crime is not sufficient to show that a defendant is a party to the crime under OCGA § 16-2-20 (Code Ann. § 26-801). *O'Neal v. State,* 239 Ga. 532 (238 SE2d 73) (1977); *Parker v. State,* 155 Ga. App. 617 (271 SE2d 871) (1980). Even approval of the act, not amounting to encouragement, will not suffice. *Parker v. State,* supra. This is so because under OCGA § 24-4-6 (Code Ann. § 38-109) "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

There is no direct evidence of any kind that Eddie intended the outcome which occurred. The mere fact that he participated in the act of bringing the shotgun and shells along or that he may have pointed the shotgun at Wayne McGee on the road does not constructively supply any intent to shoot Michael Thigpen. There is no direct evidence of his participation and no circumstantial evidence aside from his presence. In fact, his brother testified that as

they stopped the car on the road at the Thigpen driveway and heard someone inside say, "The Baldwin County boys are back," Eddie said, "Come on, Freddie, we've got to go."

Aside from his mere presence, there was no evidence of Eddie's participation in the shooting. Therefore, the court erred in not granting a directed verdict of acquittal as to Eddie on the basis that the evidence was not sufficient for conviction under Jackson v. Virginia, supra.

2. We find no error in the court's denying the motion for a mistrial because of the district attorney's reference to "statements" made by defendants. Although it was improper for the district attorney to refer to statements made by the defendants prior to a Jackson v. Denno hearing to determine their admissibility, there was no harm to the defendants because the reference was to "statements," a neutral term, rather than "confessions." The district attorney did not go into the content of the statements but merely referred in passing to them. The cases relied upon by appellants, *Watson v. State,* 137 Ga. App. 530 (224 SE2d 446) (1976), and *Hall v. State,* 138 Ga. App. 20 (225 SE2d 705) (1976), are distinguishable. *Hall* involved opening statements in which the district attorney essentially testified as to hearsay evidence against the accused. *Watson* involved inflammatory, prejudicial, and irrelevant remarks in the opening statement.

3. In regard to appellants' contention that the state failed to prove venue, we find that venue was established by the testimony of one of the guests at the party; that the cabin was located in Baldwin County, and that Michael Thigpen was shot in Baldwin County. The testimony which appellants contend created a conflict in the evidence as to venue consisted of a statement that no one knew where the county line was actually located. Even if this amounted to a conflict, the evidence was sufficient to authorize a finding that venue was in Baldwin County. *Adsitt v. State,* 248 Ga. 237 (282 SE2d 305) (1981); *Loftin v. State,* 230 Ga. 92 (195 SE2d 402) (1973); *Carter v. State,* 146 Ga. App. 681 (247 SE2d 191) (1978).

4. Appellants contend that their enumeration of error in regard to the testimony of Chris Byrd raises a question of the extent of the rule enunciated by this court in *Gibbons v. State,* 248 Ga. 858 (286 SE2d 717) (1982). The situation here differs from that in *Gibbons* in that there the question was whether prior inconsistent statements could be used as substantive evidence. Here, the question is simply whether the district attorney could claim surprise because of a prior inconsistent statement so as to impeach the witness under OCGA § 24-9-81 (Code Ann. § 38-1801) without either introducing a written statement into evidence or eliciting testimony from another witness

as to the contents of the statement. In *Davis v. State,* 249 Ga. 309 (290 SE2d 273) (1982), we noted that since our holding in *Wilson v. State,* 235 Ga. 470 (219 SE2d 756) (1975), we had on many occasions reaffirmed the removal of the requirement of prejudice, allowing impeachment where the testimony was merely inconsistent. In *Davis,* we went further and removed the requirement of surprise. Therefore, in *Davis* we held that "[T]he trial judge properly allowed the prosecutor to impeach his own witness because at the time of the questioning, the prosecutor had knowledge of a prior statement by that witness which contradicted testimony the witness had just given." Id. at 314.

The question remains whether the witness may be questioned concerning the prior statement without any necessity for introducing the statement into evidence or eliciting testimony from a second witness as to the substance of the inconsistent statement or at least its existence. We need not address this question since the district attorney, outside the presence of the jury, offered to put the investigator who interviewed Byrd on the stand. When the court allowed the leading questions without any further foundation, there was no specific objection by defense counsel which would have enabled the court to avoid a future problem by requiring additional foundation. In fact, the thrust of the defense objection was the absence of surprise on the part of the state which, in light of our recent opinions, is no longer an issue. Finally, although the direct examination of Byrd does not indicate that he was shown a statement, the cross-examination by defense counsel indicates that there was a statement shown to Byrd: "All right. This statement that you've just been shown. Is that handwritten or typed?" This enumeration is without merit.

5. Appellants contend that photographs introduced by the state were inflammatory and prejudicial. In particular, appellants contend that a photograph taken of the trunk of the victim after autopsy, state's exhibit #5, is so gruesome as to require reversal. The admission of this exhibit was vigorously opposed by defense counsel, but the state insisted upon its admission, arguing that it showed a close-up of the chest wound with powder burns. Although the photograph is illustrative of the pathologist's testimony concerning powder burns, the presence of powder burns can be detected in a photograph of the body taken before the body was subjected to a Y-shaped incision at autopsy. The body was in the custody of the state, which had the opportunity to make photographs from every angle before the autopsy was performed.

We have only recently addressed the problem of gruesome photographs and cited our increasing concern about the introduction

of prejudicial photographs with no showing of compelling necessity. *Ramey v. State,* 250 Ga. 455 (298 SE2d 503) (1983). As we noted in *Ramey,* autopsy photographs are particularly likely to be gruesome, and we found in that case that autopsy photos, like duplicative photos, should be carefully screened for relevancy. In *Williams v. State,* 250 Ga. 553 (300 SE2d 301) (1983), we went further and said that duplicative photos and an autopsy photo should not have been admitted but their admission did not constitute reversible error.

We take this opportunity to announce a rule to assist counsel in the future in deciding what photos may be offered in evidence. A photograph which depicts the victim after autopsy incisions are made or after the state of the body is changed by authorities or the pathologist will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy. A photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome, have relevance to the trial of his alleged assailant. The necessary further mutilation of a body at autopsy has no such relevance and may cause confusion, if not prejudice, in the minds of jurors. Thus the admission of state's exhibit #5 in this case was reversible error.

The remaining enumerations of error are without merit.

*Judgment affirmed in part, reversed in part. All the Justices concur, except Marshall, P. J., who dissents as to Division 5.*

DECIDED APRIL 25, 1983.

*Thomas J. Phillips, Jr., Gardner & Gardner, Milton F. Gardner, Sr.,* for appellants.

*Joseph H. Briley, District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries, Staff Assistant Attorney General,* for appellee.