## 40132. WARD v. THE STATE.

HILL, Chief Justice.

Mickey Ray Ward was tried by a jury and convicted of the murder of Danny Wood.[1] The evidence authorized the jury to find the following facts.

---

[1] The jury returned its verdict of guilty on March 17, 1982. A skeleton (now outdated; see OCGA § 5-5-42(c) (Code Ann. § 70-302) as amended in 1983) motion for new trial was filed on March 25. The transcript of evidence was filed in the trial court on September 13, 1982. The skeleton motion for new trial was overruled on April 29, 1983. Notice of appeal was filed on May 20, and the case was docketed in this court on July 15, 1983. After briefing, it was submitted for decision without oral argument on August 26, 1983.

On the evening of January 25, 1982, about eight people were at the defendant's trailer drinking and listening to music. Earlier in the evening, when the defendant's wife and another woman had gone out for liquor, they stopped by Jimmy Whitlock's trailer. The victim was there, and they told him that the defendant wanted to see him about some money owed the defendant.

When the victim arrived at the defendant's trailer with a friend at about 9:30 p.m. the victim and the defendant went into the bedroom to talk. Then the victim left for 20 minutes or more, and he returned accompanied by Jimmy Whitlock. Some 10 to 15 people were then at the trailer. The victim, the defendant, Jimmy Whitlock and Mark McClure went into the bedroom.

Mark McClure testified that there were some white bags lying on the dresser. The defendant was arguing with the victim and saying, "This dope ain't enough to cover the money you owe me." Then he got real mad and told the victim to get out. The victim, who was lying on the bed, laughed at him. The defendant then picked up a rifle and swung it around; it fired, striking the victim in the face and killing him.

Jimmy Whitlock testified that the defendant was slapping the victim around. When he, Whitlock, said "Hey, we don't want any trouble," the defendant pulled a gun on him and told him to shut up or he would blow his brains out. The gun looked like an automatic pistol. At one point the defendant had a pistol in each hand, one pointing at the victim and one at Whitlock, and said, "I'll kill you both." According to Whitlock, the defendant continued to slap the victim. Then he laid the pistol down, picked up a 30/30 rifle, breeched it, pointed it at the victim, said, "You son of a bitch," and shot the victim.[2]

The defendant testified that he did not have a phone so he asked his wife to call the victim while she was out buying liquor and ask him to come over. The first time that the victim came by, the victim said he would rather talk in the bedroom than in front of everyone. The defendant said he had to be paid back, at least in part. The victim said he was pretty sure he could get some money. He left, and returned with Whitlock. The victim said "Come on," and the two of them went in the bedroom. The victim had brought some dope which he said

---

[2] On cross-examination of Whitlock and one of the investigating officers, the defendant brought out that Whitlock had given a signed statement to investigating officers which mentioned only one handgun, not two, and did not include any reference to the defendant beating or slapping the victim.

belonged to Whitlock. He wanted the defendant to keep the dope as part payment. The defendant protested that he did not want the dope, he wanted his money. The victim then told the defendant to keep it until morning and then he would come get it and sell it. They went out to get Whitlock to tell him of that plan; Whitlock and McClure then joined them in the bedroom.

The defendant pointed to his dresser and asked Whitlock what the dope was. Whitlock responded that it was cocaine. The defendant told Whitlock that the victim had given him the dope as a payment on his debt. Whitlock protested that it was his and the victim could not do that. The victim intervened in their dispute and said maybe he could raise the money. The defendant suggested that he could leave his truck, but the victim protested. The defendant said, "Well, then you can leave the dope." Whitlock said, "No," and put his hand in his back pocket. The defendant got his rifle and told Whitlock to take his hand out of his pocket and to leave his house. Whitlock said he was not leaving without his dope. The defendant testified that as he cocked his rifle, the victim started up from the bed; the defendant jumped backwards and hit the dresser. The gun went off. He did not point the gun at the victim or intentionally pull the trigger, and he did not know what caused it to go off. Whitlock grabbed the dope and ran. The defendant had to go outside because he was getting sick. Because he was afraid of Whitlock, he retrieved a handgun from under the edge of his bed and went outside.

Kelly Fite, a firearms examiner at the Georgia State Crime Lab, testified that the murder weapon was a Marlin 30/30 caliber lever action rifle. He further testified that it took 4 1/2 pounds of pressure to pull the trigger and make the weapon fire. The rifle had a safety mechanism; it would not discharge unless the safety button was depressed. Fite tested the rifle by cocking it, pulling the lever all the way down so as to take the safety off, and abusing it from all sides with a plastic mallet; he could not get the weapon to discharge.

1. The defendant complains that the trial court erred in not charging, upon request, on both kinds of involuntary manslaughter. OCGA § 16-5-3(a) and (b) (Code Ann. § 26-1103). We disagree.

Under OCGA § 16-5-3(a) (Code Ann. § 26-1103), "A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony...." In this case, however, the shooting was either an accident or was justified by a necessity to prevent tortious or criminal interference with the defendant's property (and the jury was charged as to both of these principles), or the defendant committed an aggravated assault, which is a felony. OCGA § 16-5-21 (Code Ann.

§ 26-1302). Thus the trial court did not err in declining to charge OCGA § 16-5-3(a) (Code Ann. § 26-1103). *Richardson v. State,* 250 Ga. 506 (3) (299 SE2d 715) (1983); *Williams v. State,* 249 Ga. 6 (4) (287 SE2d 31) (1982).

Under OCGA § 16-5-3(b) (Code Ann. § 26-1103), "A person commits the offense of involuntary manslaughter in the commission of a lawful act in an unlawful manner when he causes the death of another human being without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm." In essence, the defendant contends that he was entitled to have the jury consider whether he caused the death of another human being by the commission of a lawful act in an "unlawful manner likely to cause death or great bodily harm." But, as we held in *Raines v. State,* 247 Ga. 504 (3) (277 SE2d 47) (1981), causing the death of another in a "manner likely to cause death or great bodily harm" constitutes reckless conduct. OCGA § 16-5-60 (Code Ann. § 26-2910). Reckless conduct involves consciously disregarding a substantial and unjustifiable risk that the act will cause harm or endanger the safety of another. *Raines v. State,* supra; see also *Crawford v. State,* 245 Ga. 89, 94 (263 SE2d 131) (1980); *Saylors v. State,* 251 Ga. 735 (309 SE2d 796) (1984).[3] Hence the trial court did not err in refusing to charge the law of involuntary manslaughter.

2. During his closing argument, the prosecutor stated, "But I think all of you know what was going on down there that night. There was a drug party going on down there." The defendant objected and moved for a mistrial. The trial court stated: "I'll overrule the motion for a mistrial, but I don't believe there was any testimony that there was any dope party. I'll instruct the jury to disregard the comment that there was a dope party going on." The defendant renewed his motion for a mistrial. Relying on OCGA § 17-8-75 (Code Ann. § 81-1009), he argues on appeal that the trial court erred in not ordering a mistrial and in not rebuking the prosecutor. OCGA § 17-8-75 (Code Ann. § 81-1009) provides: "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender."

---

[3] *Raines v. State,* supra, was decided after the decisions of the Court of Appeals relied upon by the defendant.

As we stated in *Jordan v. State,* 247 Ga. 328, 349 (276 SE2d 224) (1981), quoting *Powell v. State,* 179 Ga. 401 (4) (176 SE 29) (1934), " 'The grant of a mistrial for improper argument of opposing counsel is very important, and should be liberally exercised in all cases where counsel abuse their right of argument by prejudicing the case of the opposite party. However, it is necessarily a matter largely within the discretion of the court; and unless it is apparent that a mistrial was essential to the preservation of the right of fair trial, the exercise of this discretion will not be interfered with.' " In this case, the statement was not so prejudicial that a mistrial was required. While there is no evidence that the people at the "party" were using dope, there is evidence that the defendant himself was involved in a transaction involving dope. Thus we hold that the trial court did not abuse its discretion in not ordering a mistrial.

The defendant also argues that the case must be reversed because while the trial judge did instruct the jury to disregard the prosecutor's comment, he did not rebuke the prosecutor. He argues that under *Moorehead v. Counts,* 130 Ga. App. 453 (203 SE2d 553) (1973), *both* actions must be taken. This court, however, granted certiorari in that case and noted: "The Court of Appeals held that under Code § 81-1009 [OCGA § 17-8-75] an improper remark of counsel required the trial court upon motion for mistrial to rebuke counsel *and* endeavor to remove the improper impression from their minds. These are not necessarily independent actions. This court has held that where the instruction by the court to the jury to disregard the remarks was full, it in effect amounted to a rebuke of counsel. [Citations omitted.]" *Counts v. Moorehead,* 232 Ga. 220 (1) (206 SE2d 40) (1974). The prejudicial impact of the misstatement of the evidence here was minimal, and the court's instruction to the jury to disregard the statement sufficed.

3. In his final enumeration of error, the defendant contends that the trial court erred in allowing an autopsy photograph of the victim to be admitted into evidence.[4] He contends that the picture was "taken after the body had·been in cold storage for two days, rigor mortis had set in and the features of the body were highly distorted."

The state replies that rigor mortis was not apparent, the features were not distorted, and this was the only picture which showed the exit wound. We need not and do not rule on the impact of *Brown v. State,* 250 Ga. 862 (5) (302 SE2d 347) (1983), on this issue in view of

---

[4] The defendant refers to "autopsy pictures," but our examination of the record reveals that only one such picture, State's Exhibit 8, was admitted into evidence.

the fact that this case was tried before *Brown* was decided. *Brown* has been held to have prospective operation only. *Grant v. State,* 251 Ga. 434 (306 SE2d 265) (1983). Admission of this photograph was not reversible error. *Ramey v. State,* 250 Ga. 455 (1) (298 SE2d 503) (1983).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 25, 1984 —
REHEARING DENIED FEBRUARY 15, 1984.

*Jerry C. Gray,* for appellant.
*Timothy G. Madison, District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Staff Assistant Attorney General,* for appellee.