70491. WHITLEY et al. v. THE STATE.
70492. SINIARD et al. v. THE STATE.
(336 SE2d 301)

BIRDSONG, Presiding Judge.

Chief of Police William P. Whitley, and his deputy, Major C. B. Siniard, of the City of Cartersville police, appeal their convictions of the offense of theft by taking. The Cartersville police routinely placed all confiscated items of evidence in a locked evidence room on the main floor of the police station. After disposal of a case which involved particular evidence, the items of evidence would be transferred to a locked storeroom in the basement. All police investigators had a key to the evidence room on the main floor, but only Chief Whitley and Maj. Siniard had keys to the storage room in the basement.

The Cartersville police were hosting the Auto Theft Council meeting on September 13-14, 1984. It was the obligation of the host to provide refreshments for the social hour which preceded the meeting. No money was available to defray expenses for refreshments. Officers asked businesses for donations of food, drinks, or cash. Officers Siniard and Wilbanks testified that it had been the custom of prior police chiefs that beer and alcohol that had been confiscated as evidence in criminal cases and transferred to the basement storage room would be used at such police functions. Maj. Siniard testified that he advised the Chief that he was going to use the beer and alcohol in the basement storage room for refreshments at the Auto Theft Council party. Officers Siniard, Wilbanks and Nix, loaded the beer and alcohol into Siniard's truck. Jimmy Crimes saw the officers loading the alcohol into the truck and asked them where they were taking it. He was told: "To the dump."

Officer Abernathy saw the beer and alcohol being loaded on Siniard's truck and "Chief Whitley was there standing out in the hall, and I left." One officer estimated that 20-23 cases of beer and three cases of liquor were taken to the party. They returned 10-12 cases of beer and 1-½ cases of liquor. They also took 10-11 six packs of beer from the main floor evidence locker. Cases involving that beer had been disposed of. Maj. Siniard estimated they took 15 cases of beer and 10-½ gallons of alcohol.

Officer Abernathy informed the District Attorney of what he had seen and Whitley and Siniard were indicted for theft by taking. They bring this appeal from their conviction before a jury. *Held:*

1. Chief Whitley assigns as error the denial of his motion for a

directed verdict of acquittal. He admitted he was told that the officers were going to use the confiscated beer and alcohol at the Auto Theft Council party, but he denies that he saw the beverages being loaded onto Siniard's truck. He was unaware that anything was wrong with this procedure. He had heard that this had been done in the past, and no one had ever told him how he was supposed to dispose of confiscated beer and alcohol. Chief Whitley admitted that it was his responsibility to find out whether this confiscated property could be "disposed of in this manner," but he took no action to determine what were his obligations. On appeal, Whitley argues that the prosecution theory of guilt, i.e., he was a party to the crime because he aided and abetted the commission of the crime, is not supported by the evidence. The basis for this argument is that even if Siniard's act of informing him of his intent to use the confiscated beer and alcohol could be taken as approval, such approval is insufficient to support a finding of guilt. We do not agree with appellants' contentions.

a. Ownership of stolen property can be alleged in the person having actual lawful possession (OCGA § 16-1-3 (10); *Spurlin v. State*, 222 Ga. 179, 182 (149 SE2d 315)), even though only a bailee (*Hall v. State*, 132 Ga. App. 612 (208 SE2d 621)). Hence, ownership of the confiscated property was properly alleged in the indictment in the City of Cartersville as bailee.

The parties at the trial addressed the issue of ownership as one involving contraband. Our code, in referring to contraband alcoholic beverages, refers to "any alcoholic beverage [which includes malt beverages as well as alcohol (OCGA § 3-1-2 (2))] on which any tax or license fee imposed by this title has not been paid. . . ." OCGA § 3-2-33 (a) (c). Alcoholic beverages "upon which no taxes have been paid" are required to be destroyed or sold at public auction. OCGA § 3-2-34. However, the evidence in the instant case does not establish whether taxes had been paid on the beer and alcohol in the police lockers. The statement of Officer Abernathy upon which the District Attorney based his indictment, refers only to "Disposition of Tax-Paid Alcoholic Beverages." The contents of the letter refer to "tax-paid alcoholic beverages . . ." and "tax-paid beer. . . ." The opprobrium "contraband" is used throughout our code in specific instances to designate items "distributed or possessed in violation of this Code section. . . ." OCGA § 16-13-32 (e); see also OCGA §§ 3-2-35, 3-3-27 (b), 3-5-3, 3-5-28, 3-10-10, 3-10-11. However, regardless of whether these alcoholic beverages were contraband, the City of Cartersville was the owner in the sense that they were the bailee, and in lawful possession, and no prior consent had been given to the police to the divesting of this property from the city. Further, it is proper to conclude that whether this property was contraband, the police could dispose of such property *only* in a lawful manner. It was unauthorized

for these police officers personally to consume, to give as gifts to others, or to provide as refreshments for the benefit of the sponsored council meeting, seized alcoholic beverages which had been confiscated as evidence in cases previously disposed of by the courts. The City of Cartersville was wrongfully deprived of this property by the acts of the defendants.

b. The City Council of Cartersville, on November 8, 1984, passed a resolution that because the missing alcoholic beverages in cases which had been concluded were no longer required to be held as evidence but were to be destroyed; and because "the City of Cartersville was not deprived of possession of any property by C. B. Siniard and/ or Paul Whitley," they did not desire to prosecute Siniard or Whitley for the taking of confiscated alcoholic beverages "of which it had no continued use." Accordingly, it would appear that the instant case involves the prosecution of two police officers for continuing to follow an accepted practice in the past in disposing of confiscated property of which the City of Cartersville had no further use.

First, there can be no such defense to a crime as custom. See generally, 22 CJS 135, Crim. Law § 43. When an individual's conduct constitutes a criminal act, it is nonetheless a crime even though others who preceded the actor may have customarily engaged in the same activity. *Reynolds v. United States*, 98 U. S. 145 (5) (25 LE 244); 1 Wharton's Crim. Law 238, § 49. Secondly, condonation by the City of Cartersville City Council of the prior acts of Chief Whitley and Maj. Siniard cannot excuse this completed offense. A crime is by definition a public wrong against the sovereign, i.e., the state, and it is not an acceptable defense that the person wronged, in this instance the City of Cartersville, has condoned the offense. *Pratt v. State*, 167 Ga. App. 819, 820 (307 SE2d 714); 1 Burdick, The Law of Crime 244, § 191; 1 Wharton's Crim. Law & Proc. 268, § 125; 2 Brill, Cyclopedia Criminal Law 1445; 22 CJS 132, Crim. Law, § 41; 21 AmJur2d 345, Crim. Law, § 190. Last, under the evidence presented, the jury was authorized to find that Chief Whitley was informed that the city's property would be taken from the custody of the police and transported to a function hosted by the police where the alcoholic beverages would be consumed. The jury was also authorized to find that Chief Whitley "was there . . . in the hall" during the transfer of the alcoholic beverages from the police storage room to Siniard's truck, and was aware, or should have been aware, that the actual taking of the city's property was then being conducted.

c. "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. . . . A person is concerned in the commission of a crime . . . if he . . . [i]ntentionally aids or abets in the commission of the crime. . . ." OCGA § 16-2-20. Presence at the scene is not sufficient.

*Brown v. State*, 250 Ga. 862, 864 (302 SE2d 347). "Even approval of the act, not amounting to encouragement, will not suffice." Id. And mere knowledge, *by a private citizen*, that a crime is going to be committed, in the absence of a duty to prevent it, does not make the citizen guilty of participating in the crime. See generally 22 CJS 263, Crim. Law, § 88 (2); 1 Wharton's Criminal Law 169, § 32, Our sister states and federal courts have generally held that aiding and abetting the commission of crime requires affirmative action, and an individual's mere knowledge that a crime will be committed, and failure to take steps to prevent that crime, do not amount to aiding and abetting. *People v. Weber*, 190 P2d 46 (5) (Ca. 1948); *United States v. Garguilo*, 310 F2d 249 (2d Cir. 1962); *United States v. Samaniego*, 437 F2d 1244 (9th Cir. 1971). However, if the person had knowledge of the intended crime and shared in the criminal intent of the principal actor, he is an aider and abettor. *Hernandez v. United States*, 300 F2d 114 (9th Cir. 1962); *United States v. Kramer*, 236 F2d 656 (7th Cir. 1956); *Johnson v. United States*, 195 F2d 673 (8th Cir. 1952). Hence, if the defendant was at the scene and did not disapprove or oppose the commission of the offense, a trier of fact may consider such conduct in connection with prior knowledge and would be authorized to conclude the defendant assented to the commission of the offense, that he lent his approval to it, thereby aiding and abetting commission of the crime. *People v. Nelson*, 333 NE2d 649 (Ill. 1975).

Our stated legislative intent for "law enforcement support personnel" is "prevention, detection, or investigation of crime." OCGA § 35-8-2 (6). We may safely assume that this duty is the obligation of all law enforcement personnel. Hence, the police officer is under a more compelling obligation than a private citizen when it concerns knowledge of, or duty to prevent commission of crime. It has been the consistent holding of our courts that a police officer who fails to perform his duty in the prevention of crime is in violation of the office entrusted to him. See *United States v. Konovsky*, 202 F2d 721 (1) (20) (7th Cir. 1953); *Lynch v. United States*, 189 F2d 476, 479-480 (5th Cir. 1951); *Catlette v. United States*, 132 F2d 902, 907 (4th Cir. 1943); see also Hughes, Criminal Omissions, 67 Yale LJ 590; Kirchheimer, Criminal Omissions, 55 Harvard LR 615. It is also interesting to note that it was St. Thomas who first espoused the view that the omission to act was criminal only when there was a duty to act. Id. p. 616. Thus, we hold that one who has mere knowledge that a crime is to be committed, in the absence of a duty to prevent it, does not make one a participant, but since a crime may consist of an "omission to act" (OCGA § 16-2-1), where an individual has prior knowledge of commission of a crime, and has a concomitant duty to prevent its commission, an omission to perform his duty can amount to tacit approval to a subordinate. Where the jury is authorized to

find, as it was here, prior knowledge and presence of a police officer at the scene, whose duty it was to prevent crime, the jury may lawfully find his conduct amounted to aiding and abetting the commission of the offense. *People v. Nelson,* supra; cf. *Slack v. State,* 159 Ga. App. 185, 189 (283 SE2d 64); *Adams v. State,* 164 Ga. App. 295, 296 (297 SE2d 77); see generally 21 AmJur2d 87, Crim. Law, § 6.

The trial court did not err in denying defendant Whitley's motion for directed verdict at the conclusion of the trial.

2. For the reasons stated above, it was not error for the trial court to deny Siniard's motion for directed verdict at the conclusion of the trial.

*Judgments affirmed. Carley, J., concurs. Sognier, J., concurs in the judgment only.*

DECIDED OCTOBER 8, 1985.

*William T. Elsey,* for appellants.
*Darrell E. Wilson, District Attorney, Joseph L. Chambers, Assistant District Attorney,* for appellee.