## 71322. BARNETT v. THE STATE.
### (343 SE2d 155)

POPE, Judge.

Joseph Barnett was tried and convicted as a party to the crime of aggravated assault. He was sentenced to serve seven years with an additional thirteen years on probation. In his appeal, defendant argues that the evidence at trial was insufficient to show that he was a party to the crime charged.

Defendant gave a party at his home on December 19, 1982 starting in the early afternoon. Besides food and intoxicating beverages furnished by the host there was also a dice game in the basement conducted by one Bilbo. Among the participants were two, Milligan and Couch, who figure prominently in the chain of events. In the late afternoon Milligan became convinced that the game was "crooked" and forcibly induced Bilbo to repay all the losers. Couch, after getting his money, went up to defendant's kitchen and told defendant he had better go downstairs, there was a "big problem." Since defendant and Couch had a past history of antagonism, one word led to another, culminating in defendant's ordering Couch to leave. When Couch tar-

ried, defendant moved toward a utility room where it later appeared he kept a 12-gauge shotgun and Couch grabbed him. A scuffle ensued. At this point Milligan arrived in the kitchen and, according to his testimony, attempted to stop the fracas. When the two combatants persisted, with defendant cursing and threatening Couch, Milligan told them to "finish it." There was a fight during which the defendant was apparently badly mauled. The fight was stopped but defendant hollered at Couch that he was going to kill him. Defendant then got his shotgun but Milligan took it away from him and told Couch to leave. While Couch was leaving defendant told him "you'll be dead before morning." Defendant then obtained a "30-06" rifle but Milligan again disarmed him.

The party then broke up with most of the invitees leaving. At this point Johnson and Kaplan returned to the house. They had been cutting wood and drinking beer throughout the day and had dropped in on the party before leaving to deliver the wood to Johnson's house. They were both friends of defendant (Kaplan sometimes stayed at his house and did odd jobs for him) and stayed to commiserate with him. As the three drank into the evening, the principal topic was revenge against Couch for beating the defendant. According to Johnson and Kaplan, but not defendant, each of them alternately cursed and threatened Couch with bodily harm.

The three then decided to visit Cason who would presumably aid in convincing defendant he should go to the hospital to have his wounds tended. Kaplan put the 30-06 rifle in the truck[1] and the three went to Cason's. Nothing was achieved there and according to Johnson's version, they then proceeded, "cussing and wanting to get him back," to Couch's house which was nearby. Since Johnson did not know where Couch lived, defendant and Kaplan gave directions. After defendant pointed out the house, Johnson drove back to defendant's home. The parties disembarked leaving the 30-06 rifle in the truck.

Johnson's version of what followed is that defendant lay down on a couch in the den while he and Kaplan continued drinking in the kitchen.[2] Kaplan then went into the den for a minute. Johnson did not hear if anything was said, and Kaplan returned, saying "let's ride" to Cason's house. After another unsuccessful venture at Cason's, Kaplan directed Johnson, who was again driving and who did not remember where Couch lived, back to Couch's house. As they were driving by with the house on the passenger's side of the truck, Kaplan raised the rifle and fired a shot in the direction of the house.[3] Johnson "took off" and returned to defendant's place. Johnson then had a

---

[1] According to Johnson; however, Kaplan testified the rifle was already in the truck.
[2] Kaplan testified defendant went to sleep.
[3] Kaplan stated Johnson picked up the rifle and fired it at the house.

brief conversation with defendant and told him where they had been and what they had done.

The bullet from the 30-06 rifle passed through the front door and a wall and struck Couch's 5-year-old son in the leg as he was sleeping. In response to a call by Couch's wife the police arrived and shortly thereafter the investigating officer then went to defendant's place. This was a result of Kaplan's call about a problem with Bilbo's van which had been left at defendant's and which Milligan and some others wanted to tow off as security for further gambling losses they had discovered. While there, the officer saw the 30-06 rifle in the truck. This eventually led to the arrest and indictment of Johnson and Kaplan and finally defendant. As a result of plea bargaining Johnson pled guilty and testified at Kaplan's and defendant's trial. They also testified. Both were convicted. *Held*:

We reverse. OCGA § 16-2-20 (a) provides: "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." The pertinent subsections of OCGA § 16-2-20 are (b) (3) and (4) which read: "A person is concerned in the commission of a crime only if he: . . . (3) Intentionally aids or abets in the commission of a crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime."

The evidence adduced is insufficient to enable a rational trier of fact to find that defendant was a party to the crime committed by Johnson and Kaplan under the test of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). While there is evidence that defendant, still smarting from his beating at the hands of Couch, made general threats against Couch and made rumblings about getting even, there is no evidence to suggest that this "talking big" ever took any direction. In fact, when a specific means of taking revenge was suggested to Barnett by Johnson, hiring someone to burn Couch's house, Barnett rejected it and told Johnson and Kaplan not to get involved, that he would get even.

Both Johnson and Kaplan testified that Barnett was unaware of the second trip to Cason's and then to Couch's. In fact, the evidence shows that Johnson and Kaplan did not formulate the idea of going to Couch's on the second trip until they left Cason's. Of course, the evidence shows that defendant was at home asleep during this entire second trip. Both Johnson and Kaplan testified that defendant did nothing and said nothing to suggest, direct, or encourage the second trip, or any means of taking revenge upon Couch. Thus, there is no evidence that defendant aided, abetted, advised, or encouraged the crime.

"Although circumstances create suspicion of defendant's guilt of the offense charged, the circumstantial evidence presented by the

[S]tate fails to preclude every other reasonable hypothesis. . . ." *Wright v. State*, 147 Ga. App. 111, 112 (248 SE2d 183) (1978). " 'To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.' " *Brown v. State*, 250 Ga. 862, 864 (302 SE2d 347) (1983). The evidence in the present case does not do this and, thus, is insufficient to support defendant's conviction. See *Brown v. State*, supra at (1); *Parker v. State*, 155 Ga. App. 617 (2) (271 SE2d 871) (1980). Therefore, defendant's conviction must be reversed.

*Judgment reversed. Banke, C. J., Birdsong, P. J., Carley, Sognier, and Benham, JJ., concur. Deen, P. J., McMurray, P. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

The defendant contends his conviction was unauthorized because the evidence failed to establish that he was a participant in the crime of aggravated assault. He recognizes that a showing of direct involvement is not necessary and that a defendant may be convicted as a party to a crime under OCGA § 16-2-20 absent physical presence at the scene. *Carter v. State*, 168 Ga. App. 177 (3) (308 SE2d 438) (1983).

OCGA § 16-2-20 (a) provides: "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." The pertinent subsections of OCGA § 16-2-20 are (b) (3) and (4) which read: "A person is concerned in the commission of a crime only if he: . . . (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime."

Defendant contends he is not a party to the crime under either (3) or (4) because he was asleep and did not know Johnson and Kaplan left the house or where they were going; that he did not provide the weapon as Kaplan placed it in the truck and he did not provide the vehicle which belonged to Johnson. It is urged that at most the evidence might show defendant approved the criminal act and that fact standing alone does not make one a party to the crime. *Parker v. State*, 155 Ga. App. 617, 618 (271 SE2d 871) (1980). Defendant also argues that association with the individuals who committed the assault is not sufficient. *Brown v. State*, 250 Ga. 862, 864 (302 SE2d 347) (1983). Likewise as to evidence of post incident knowledge. *Barnes v. State*, 168 Ga. App. 925, 926 (310 SE2d 777) (1983). Lastly, defendant contends that he cannot be convicted on a "conspiracy" theory because there was no agreement to commit the crime.

Addressing the last argument first, the "conspiracy" referred to is

not the independent crime itself, i.e., OCGA § 16-4-8. Before conspiracy was incorporated into the penal code as a separate crime, the Supreme Court observed that: "conspiracy with another to commit an offense may be an element in the guilt of one charged as an accessory before the fact." *Bishop v. State*, 118 Ga. 799 (4) (45 SE 614) (1903). The Court noted: "conspiracy is referred to as an incident, and one of the means by which the act is accomplished." Id. at 802. After conspiracy became a separate crime in the Criminal Code of 1968, the Supreme Court interpreted what is now OCGA § 16-2-20 and held: "While this Code section does not use the word 'conspiracy' it is plain it embodies the theory of conspiracy insofar as it renders one not directly involved in the commission of a crime responsible as a party thereto." *Scott v. State*, 229 Ga. 541, 544 (192 SE2d 367) (1972); *Hamby v. State*, 158 Ga. App. 265 (2) (279 SE2d 715) (1981).

Thus, the concept of "conspiracy" is embraced in OCGA § 16-2-20 (*Harvey v. State*, 233 Ga. 41, 44 (5) (209 SE2d 587) (1974)) but only in the sense that it is merely an evidentiary tool used by the state to help prove the accused is guilty of the offense charged. *Kilgore v. State*, 251 Ga. 291, 295 (1c) (305 SE2d 82) (1983). In short, the rationale of "conspiracy" can be utilized in determining if one is a party to a crime or concerned in its commission. See in this connection *Battle v. State*, 231 Ga. 501 (202 SE2d 449) (1973); *Hoerner v. State*, 246 Ga. 374, 375 (271 SE2d 458) (1980).

The committee notes to old Code section 26-801 (now OCGA § 16-2-20) traced the historical perspective and distinctions regarding principals in the second degree who had to be actively or constructively present when the crime was committed and accessories before the fact who were absent from the scene of the crime. It was pointed out that any mention of presence or absence was intentionally omitted from (b) (3) or (4), so that when read together it is clear "that anyone who aids in or procures the commission of a crime is guilty of the crime, whether or not he is present when the crime is committed." See *Burke v. State*, 234 Ga. 512, 516 (4) (216 SE2d 812) (1975). Recognizing that OCGA § 16-2-20 "embodies the theory of conspiracy insofar as it renders one not directly involved in the commission of a crime responsible as a party thereto," this court in *Shehee v. State*, 167 Ga. App. 542, 543 (307 SE2d 54) (1983) enunciated the fundamental result of this concept "that when individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy by one of the conspirators is in legal contemplation the act of all."

The Code section leaves unaltered "the principle that conspirators are responsible for the probable consequences of the execution of their design." *Burke v. State*, 234 Ga. 512, 516 (4), supra.

In reviewing this case, "[i]t is appropriate to consider all circum-

stances surrounding" the incident in determining whether defendant was a party to the crime. *Moran v. State*, 139 Ga. App. 274, 275 (228 SE2d 216) (1976). A requisite element to establish that one is a party to a crime is proof of a common criminal intent. *Jones v. State*, 250 Ga. 11, 13 (295 SE2d 71) (1982). This fact need not be shown by an express, formal agreement or that the unlawful objective was formulated either by words or writings, a tacit understanding is sufficient. *Walden v. State*, 121 Ga. App. 142, 144 (1) (173 SE2d 110) (1970).

The existence of a common purpose may be shown by circumstantial, as well as direct, evidence. *Hurt v. State*, 239 Ga. 655, 673 (1) (238 SE2d 542) (1977). Among the factors on which to base such a finding are the acts and conduct of the parties, the nature of the acts done, the relation of the parties and their interests. *Hewitt v. State*, 127 Ga. App. 180, 183 (4) (193 SE2d 47) (1972).

Mere presence at the scene is not sufficient to convict one of being a party to a crime but "companionship and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." *Jones v. State*, 242 Ga. 893 (1) (252 SE2d 394) (1979). Accord *Kimbro v. State*, 152 Ga. App. 893 (264 SE2d 327) (1980); *Parham v. State*, 166 Ga. App. 855, 856 (1) (305 SE2d 599) (1983). See *Perkins v. State*, 231 Ga. 680, 681 (203 SE2d 854) (1974).

Here, the defendant, battered by Couch, made threats and attempted to carry out these threats while Couch was in his presence. He was then joined by Johnson and Kaplan. All remained at the house for a time drinking, cursing Couch and making threats against him. Kaplan testified that Johnson stated he could hire someone to "torch" Couch's home. Johnson denied this but in any event such was the tone of the conversation among the three. They then went for a drive with the rifle in the truck ostensibly to see Cason but ending up having defendant "point out" where Couch lived and driving by his home. Upon their return defendant lay down on a couch. Kaplan went to the room where he was and shortly thereafter emerged with the idea that he and Johnson visit Cason. After that visit the two drove on to Couch's where the shot was fired that gave rise to the criminal charges against all three.

The evidence here showed defendant did more than merely approve of the results and more than merely associate with those who did commit the offense. Intent may be shown by defendant's words and by conduct, demeanor and other circumstances connected with the act for which defendant was prosecuted. *Brooks v. State*, 151 Ga. App. 384, 386 (1) (259 SE2d 743) (1979); *Parham v. State*, 166 Ga. App. 855, 856, supra. The determination as to whether the defendant was a party to the crime was within the province of the jury. *Moran v. State*, 139 Ga. App. 274, 275, supra; *Gunter v. State*, 243 Ga. 651, 659

(256 SE2d 341) (1979).

Defendant's arguments that he was not a party because he did not furnish the vehicle or the gun and he was sleeping[1] when certain actions were taken, in effect, beg the question. Even the fact there is an absence of express language by defendant directing his two companions is not crucial. Important here is evidence revealing the whole tenor of the evening in question, the words and actions of the defendant in the context of the words and actions of all of the individuals involved. These would enable a jury to find that the parties tacitly and implicitly consorted to take revenge upon and to harm Couch. In this regard the evidence authorized a determination that defendant, if not indeed the prime mover, was at least the catalyst or precipitating factor in the commission of the act. Thus, a finding that defendant either aided and abetted or advised, encouraged, counseled or procured another to commit the crime was warranted.

There being evidence from which a rational trier of fact could find proof of defendant's guilt beyond a reasonable doubt, I would affirm. I take into account that the jury could observe and hear the witnesses, which we cannot do. It thus was able to receive unspoken evidence as well as spoken words, and we have only the latter, reduced to writing. The jury's verdict should not be disturbed.

I am authorized to state that Presiding Judge Deen joins in this dissent.

DECIDED MARCH 21, 1986.

*Bobby Lee Cook, James F. Wyatt III, Wayne W. Gammon,* for appellant.

*William A. Foster III, District Attorney, Donald N. Wilson, Christine C. Daniel, Assistant District Attorneys,* for appellee.

---

[1] However, the rifle was his and the evidence did not demand a finding that he was asleep.