## 39960. WHITE v. THE STATE.

SMITH, Justice.

Following a jury trial in the Superior Court of Irwin County, Eddie James White was found guilty of murdering the twenty-two-month-old child of his girl friend. He received a life sentence. White has below average mental ability and the principal question on appeal is whether the trial court erred in admitting his inculpatory in-custody statement. We affirm.

According to his own trial testimony, on the morning of June 29, 1982, White went to visit his girl friend and her twenty-two-month-old daughter. In the early afternoon he took the child and walked, with her mother's permission, to his own house. The child soiled herself on the way and on arrival White gave her a bath. However, the bath was hot and she cried when White took her

out some time later, after listening to his stereo in another part of the house and running an errand to the store, he noticed burned skin peeling from her foot. He telephoned her mother and they agreed that the injury was serious enough to need medical attention. At the hospital emergency room White told police officers summoned by a doctor that he had "stuck the baby in some hot water, you know, I ain't mean to do it."

The emergency room physician testified that the child presented burns on her feet and legs, bright red blood on her underclothing, tears and lacerations deep into the vagina, a throat infection, bruises on her chest, and a lethargic manner unresponsive to painful stimuli that would have aroused a healthy child. Based on this initial examination he concluded that she had been molested or abused and called the police. Her high body temperature, rapid pulse, and elevated respiratory rate indicated that she was very sick, apart from what were later determined to be second degree burns on her feet and legs. Her rectum was not abnormal externally and was not obviously otherwise damaged. The state theorized that White sexually abused the child and bathed her in order to wash away the evidence.

Due to the extent and complexity of her problems, the child was transferred to a more comprehensive medical facility later that day. The doctor there described her as being in a "catatonic trance," out of touch with reality and in psychological shock. He also examined her vagina and removed a small mass of foreign material of a wood-like consistency. Her burns were treated, the lacerations sewn up, and she was put on a program to stabilize her condition. The next day she was improved and responded to stimulation but would not speak. On the second day of treatment her burns and vaginal injuries were healing properly and she had an appetite. On the morning of July 2, however, her condition worsened and as the attending physician prepared her for surgery to investigate abdominal complications, she suffered a cardiac pulmonary arrest. Emergency procedures failed to restore heart function and she was pronounced dead some minutes later, during her third day of hospitalization.

An autopsy revealed that the child had peritonitis, an abdominal infection, which was determined to be the cause of death. The peritonitis was the result of a two or three-day-old perforation in the lower portion of the rectum, which allowed fecal matter to spill into the abdominal cavity. Medical experts testified that such an injury would have to be caused by rough, rapid insertion of some object at least two to three inches long with a sharp or roughened point, such as a finger, but not a rectal thermometer. Throughout her hospital stay the child's rectum was unremarkable.

White had been taken into police custody from the hospital emergency room the first day. He was advised of his constitutional rights and after each one asked if he understood it. He said that he did. Then he was given a waiver of counsel form to sign which, according to police, he appeared to read before signing. He never asked for an attorney or refused to talk with police. He freely admitted burning the child but maintained that it was accidental. About two hours later White admitted that he had inserted his finger in the child's vagina. Questioning then ceased and White dictated a statement describing the act. At that time police were unaware of injuries to the child's rectum that would shortly lead to her death. White was later indicted by an Irwin County grand jury for child molestation and felony murder and convicted of murder.

1. White contends that the court erred in admitting his in-custody statement to police, arguing that it was not given freely and voluntarily and that he did not make a knowing and intelligent waiver of his rights to remain silent and to consult with an attorney. White signed a waiver of rights form at 9:20 p.m. and testified that he did so before interrogation began at the police station. He completed dictation of his inculpatory statement, in which he admitted inserting his finger in the child's vagina, at 11:09 p.m.

White now asserts that police intimidated and coerced him for about two hours by interrogating him in teams, alternating sharp, intense questioning with more friendly, sympathetic treatment by a second officer. He does not deny that his rights were read to him, that he acknowledged that he understood them, and that he signed a pre-printed sheet handed to him to read and sign if he agreed to waive them. In addition, police testified that he gave early indication of making knowledgeable responses to their questions concerning whether he understood his rights. He now urges that the circumstances of the interrogation should be analyzed in light of West v. United States, 399 F2d 467 (5th Cir. 1968), cert. denied, 393 U. S. 1102 (1969). We decline to do so, however, because West is inapposite here. It enumerates factors applying to confessions or statements of juveniles, and White, who was 18 years old, was not a juvenile. See OCGA § 39-1-1 (Code Ann. § 74-104).

Examining the totality of the circumstances surrounding White's interrogation and statement, including the manner of questioning by interrogators with contrasting styles, we conclude that the trial court did not err in admitting the statement and that White's waiver was voluntary. His lower than average intelligence quotient and reading difficulty are not sufficient in themselves to show that White was incapable of understanding his rights when read to him or by him. Although White denied at trial that part of his

statement wherein he described abusing the child's vagina with his finger, he otherwise affirmed that he had burned her and that she was committed to his care during the time when the ultimately fatal perforation of the colon could have occurred. The trial court had ample evidence to support its determination of the admissibility of the statement and we will not disturb that ruling. *Donaldson v. State,* 249 Ga. 186 (5) (289 SE2d 242) (1982).

2. White asserts the general grounds. Although the evidence in this case was largely circumstantial, after reviewing it in the light most favorable to the prosecution, we find that any rational trier of fact could have found White guilty of the crime of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). It was not error to deny White's motion for a directed verdict of acquittal.

3. White objected to admission into evidence of a photograph of certain bruises on the victim's body on grounds that the witness who identified the picture stated that it did not give a fair and accurate representation of the scene depicted.

This enumeration of error has no merit. The witness merely testified that compared to a visual examination, the photograph did not show the bruises to be as pronounced. It is obvious that a photograph is a representation, not a reconstruction of a scene, and it need not be flawless. *Page v. State,* 237 Ga. 20 (227 SE2d 8) (1976).

4. White contends that it was error to admit into evidence several other photographs depicting the victim's injuries. He also objected to admission of a piece of skin found in his house by police investigators. He contends that each of these exhibits involved proof of burns or bruises unrelated to the injuries of which he was accused and thus they lack probative value.

White was charged with felony murder and with child molestation committed with intent to arouse and satisfy his sexual desires. He argues that it would be difficult to imagine an individual attempting to obtain sexual gratification by inflicting the physical abuse depicted in hospital photographs of the child. We will not comment on this argument except to say that it has no merit. We conclude that the exhibits were relevant to the charge of child abuse, a felony underlying the count against White of murder while in the commission of a felony.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 7, 1983 —
REHEARING DENIED OCTOBER 4, 1983.

*Walters, Davis, Smith & Meeks, Thomas E. Pujadas,* for

appellant.

*Thomas H. Pittman, District Attorney, Arthur W. Leach, Robert C. Wilmot, Assistant District Attorneys, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.