S93A1213. BULLARD v. THE STATE.
S93A1214. YOUNG v. THE STATE.
(436 SE2d 647)

SEARS-COLLINS, Justice.

John Bullard and Theresa Young were convicted in Berrien County of murder and concealing the death of another in connection with the shooting death of Clifton Rowe. Bullard was also convicted

of possession of a firearm during the commission of a crime.[1]

There was evidence of the following facts: John Bullard and Theresa Young were romantically involved, and on May 25, 1992, Young invited Bullard, who was then living at his mother's house, to move in with her at her trailer. At that time, Bullard said he was unsure, but the next day he decided that moving in together would be a good thing for them, and he went to Young's trailer, cleaned the trailer and lot, cooked a meal for them and waited for Young to get home from work. When she did not return when expected, Bullard began looking for her. He was still looking for Young at about 11:00 that night when he drove by Rowe's trailer. Rowe was Bullard's friend and former roommate, but Rowe and Young worked together, rode to and from work together, and Bullard had been somewhat suspicious that Young and Rowe might have become more than friends. Bullard saw Young's car parked close to Rowe's trailer. Bullard testified that when he approached the car, he saw the passenger door open, Young on the front seat wearing a t-shirt and panties, and Rowe standing over her pulling up his pants. When he saw Bullard, Rowe ran off. Bullard yanked Young from the car, beat her, put her in his truck, took her to her trailer, where he beat her again, giving Young two black eyes, a bloody nose and ear, a bruised neck, a bruised pelvis and bruised thighs. The beating also caused Young to have blood in her urine and to lose control of her bowels. When Bullard demanded to know what had gone on, Young said that she and Rowe had gone to a bar on the way home from work, she had gotten very drunk, and she did not remember what had actually happened between her and Rowe in the car. Bullard, outraged, took Young back to Rowe's trailer to find out just what had happened and to get Young's purse and car. Rowe answered Young's knock. Bullard followed Young into Rowe's trailer, where he severely beat Rowe.

The next day, both Young and Rowe took out warrants against Bullard. Bullard was arrested the same day and spent the night in jail before being bailed out by his mother. Young, afraid that Bullard would beat her again, went with Rowe to stay at Rowe's parents' house in the nearby town of Nashville, Georgia. Bullard tried to con-

---

[1] The shooting occurred on June 2, 1992. Bullard and Young were indicted on August 3, 1992. The trial was held in Berrien County Superior Court on January 4 and 5, 1993, and the appellants were convicted and sentenced to life imprisonment for murder and one year for concealment of the death of another, to run consecutively, on January 5, 1993. Bullard also received a sentence of five years to run consecutively for possession of a firearm. Bullard filed a motion for new trial on January 20, 1993, and Young filed a motion for new trial on January 28, 1993. The trial court denied both motions on March 8, 1993. The court reporter certified the trial transcript on May 3, 1993. Young filed a notice of appeal on March 25, 1993, and Bullard filed a notice of appeal on March 26, 1993. Both appeals were docketed in this court on May 6, 1993, and were submitted without oral argument on June 18, 1993.

tact Young, according to him, to apologize, but Rowe's parents told Bullard that Young was not at their house and that they did not know where she was. Bullard suspected that Young was staying with the Rowes, however, and on the morning of June 2, 1992, Bullard drove his car to a place on a road that he suspected Young and Rowe would have to travel to get to work in Homerville, Georgia. Bullard stopped on the side of the road, and when Young and Rowe passed, he followed them, flashing his lights and blowing his horn to get them to stop. When Young, who was driving, failed to stop, Bullard pulled in front of the car and put on his brakes. Young tried to turn around and go back the way she had come, but her car stalled. Rowe and Bullard got out of their cars and approached each other. Both men had handguns. Bullard admits that he shot Rowe in the chest at that time, killing him, but claims that he shot in self-defense after Rowe chased and threatened him. Young testified that since the night of the beatings, she had often heard Rowe threaten to kill Bullard.

Bullard then put Rowe's body in the back of his truck, and told Young, who was "screaming and hollering," to calm down and follow him to the hospital. Young testified that she was "scared" and did exactly what Bullard told her to do then and thereafter.

Bullard did not go to the hospital, but drove to a wooded area where he left Rowe's body, covered with leaves, telling Young that he had acted in self-defense but that there was no way anybody would believe it. Bullard and Young then went to Bullard's workplace, and she stayed with him there that day. That night, both Young and Bullard stayed at Bullard's brother's house. While there, Young telephoned Rowe's parents and asked if they knew Rowe's whereabouts. Rowe's parents told Young that Rowe was missing and that the sheriff wanted to talk to her and Bullard. Young called the sheriff. Thereafter, both she and Bullard went to the courthouse, where they separately gave consistent statements to the effect that they knew nothing about Rowe's whereabouts.

Two days later Bullard and Young drove to where Rowe's body had been left. Using a machete, Bullard cut the arms, legs and head from Rowe's body, put the body parts into plastic bags, and dumped the bags at different locations in the surrounding woods of Lanier and Berrien counties. Young was in Bullard's vehicle while he cut up the body and distributed the body parts. Before dismembering the body, Bullard confessed the shooting to another friend, who reported Bullard to the police, and Bullard and Young were arrested and charged with murder. After being arrested, Bullard and Young gave statements consistent with the above facts, and helped the police to recover the body parts.

*S93A1214. Theresa Young*

1. Young argues that the state presented insufficient evidence to convict her of malice murder, in that the only direct evidence against her was connected with the charge of concealing the death of another, to which she admitted being guilty. We agree.

Under OCGA § 16-2-20 (b), a person may be found guilty as a party to a crime if that person:

(1) Directly commits the crime;
(2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity;
(3) Intentionally aids or abets in the commission of a crime;
(4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

Furthermore, "[t]o warrant a conviction on circumstantial evidence [alone], the proved facts [must] not only be consistent with the hypothesis of guilt, but [must] exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. Although "criminal intent may be inferred from conduct before, during, and after the commission of the crime," *Sands v. State*, 262 Ga. 367, 368 (418 SE2d 55) (1992),

[p]resence at the scene of a crime is not sufficient to show that a defendant is a party to the crime under OCGA § 16-2-20. *O'Neal v. State*, 239 Ga. 532 (238 SE2d 73) (1977); *Parker v. State*, 155 Ga. App. 617 (271 SE2d 871) (1980). Even approval of the act, not amounting to encouragement, will not suffice. *Parker v. State*, supra.

*Brown v. State*, 250 Ga. 862, 864 (1) (302 SE2d 347) (1983). See also *Moore v. State*, 255 Ga. 519, 520 (340 SE2d 888) (1986) (in both *Brown* and *Moore*, this court reversed the appellant's murder conviction because the circumstantial evidence presented by the state was not sufficient to convict the appellant as a party to the murder under the tests set forth in OCGA § 24-4-6 and in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)).

In this case, there was sufficient direct evidence that Young is guilty of concealing the death of another. However, there was neither direct evidence nor sufficient circumstantial evidence that she was a party to Rowe's murder. Therefore, the evidence was insufficient as a matter of law to convict Young as a party to the crime of murder,

*Jackson v. Virginia,* supra; OCGA § 24-4-6, and the trial court erred in refusing to grant Young's motion for a directed verdict.

2. Because of our holding in Division 1, it is not necessary for this court to consider Young's remaining enumerations of error.

## S93A1213. John Bullard

3. As "[i]t is well established that a trial court is not required to accept a plea of guilty," *Sartin v. State* 201 Ga. App. 612 (411 SE2d 582) (1991), the trial court did not err in refusing to accept Bullard's plea of guilty to the charge of concealing the death of another.

4. The offense of murder and the offense of concealing the death of another were not joined in this case "solely on the ground that they are of the same or similar character," *Dingler v. State,* 233 Ga. 462, 463 (211 SE2d 752) (1975). Rather, the charges were based on "a series of acts connected together and constituting parts of a single scheme or plan," id. at 463-464, and it was within the sound discretion of the trial court to refuse to sever the charge of concealing the death of another.

5. Bullard contends that the trial court erred in admitting into evidence nine bones, six photographs of the victim's body parts, and a videotape of the recovery of the body parts, because the evidence was highly inflammatory and prevented the jury from making a rational decision regarding his plea of self-defense. The state argues that the evidence was properly admitted, in that the skull and mandible were admitted to prove the identity of the victim, the shoulder blade was admitted to show the location of the fatal wound, the other bones and three pictures were admitted to illustrate the chopping incisions on the bones, which were relevant to the charge of concealing the death of another, and the remaining three photographs and the videotape were relevant to the charge of concealment and to the jury's determination of whether Bullard acted with malice and criminal intent when he shot Rowe.

Photographs of a victim's body after autopsy by the state

> will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy. A photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome, have relevance to the trial of his alleged assailant.

*Brown,* 250 Ga. at 867 (5). Videotapes are generally admissible with the same limitations and on the same grounds as photographs. See *Jones v. State,* 250 Ga. 498 (299 SE2d 549) (1983). The gruesome nature of the photographs and videotape complained of results entirely from the acts of the appellant, not from any alteration or autopsy by

the state. Furthermore, the photographs and videotape were probative of relevant issues. We find no abuse of discretion in their admission.

The actual bones and body parts, admitted into evidence in jars of formaldehyde, present a closer question, as such demonstrative evidence could by its very nature tend to arouse more passion in jurors than mere photographs. However, like the photographs, in this case the bones were probative of relevant issues, their gruesome appearance was not caused by any act of the state, and we cannot say that the trial court's decision to admit this evidence rises to the level of an abuse of discretion. See *White v. State*, 251 Ga. 482, 485 (306 SE2d 636) (1983) (not error to admit a piece of the victim's skin found in the appellant's apartment); and *Hance v. State*, 254 Ga. 575 (332 SE2d 287) (1985) (not error to admit the victim's bones, pieces of the victim's bones, bone chips and teeth found near her body). The trial court did not err in admitting the contested evidence or in refusing to grant Bullard's motion for mistrial made when the evidence came before the jury.

6. While there was some evidence from which the jury could have found that Bullard acted in self-defense, there was also ample evidence to allow a rational trier of fact to find Bullard guilty beyond a reasonable doubt of malice murder and the other crimes charged, *Jackson v. Virginia*, supra, and to support the trial court's decision to deny Bullard's motion for new trial.

*Judgment affirmed in Case No. S93A1213. All the Justices concur. Judgment reversed in Case No. S93A1214. All the Justices concur.*

DECIDED DECEMBER 2, 1993 —
RECONSIDERATION DENIED DECEMBER 17, 1993.

*J. Reese Franklin*, for appellant (case no. S93A1213).
*Suzanne P. Mathis*, for appellant (case no. S93A1214).
*Robert B. Ellis, Jr.*, District Attorney, *Robert D. Cullifer*, Assistant District Attorney, *Michael J. Bowers*, Attorney General, *Susan V. Boleyn*, Senior Assistant Attorney General, *Paige M. Reese*, Staff Attorney, for appellee.