## A95A1935. WEEKS v. THE STATE.

(469 SE2d 316)

McMurray, Presiding Judge.

By way of a special presentment, defendant was charged with cruelty to children in that he did "unlawfully, and maliciously cause ['J. P.'], a child under the age of 18, excessive physical pain by burning said child repeatedly with a cigarette." The evidence at his jury trial showed the following: Kim Wilson, an investigator with the Polk County Department of Family & Children Services interviewed the six-year-old victim, J. P., at Westside School in late August 1994. She noticed several sores on J. P.'s face. When she asked J. P. about these sores, he said " 'They're probably cigarette burns.' . . . [Kim Wilson asked,] 'Well, whose cigarettes would they be?' And he said, 'Probably my mama's or my daddy's.' " The man J. P. "called daddy he said was [defendant]." The several sores were "circular and kind of scabbing over." J. P. declined to explain how he came to be burned by cigarettes. "All he said was they were probably cigarette burns." During a second interview with J. P., attended by one of J. P.'s teachers, J. P. "did tell [Kim Wilson] that [the sores] were cigarette burns. And [Kim Wilson] asked him how they were burned, and he said that daddy. And [Kim Wilson] asked who he was referring to and he said, [defendant] had burned him with a cigarette." Special Agent Russell E. Andrews of the Georgia Bureau of Investigation and then Chief Investigator Ron Thomas of the Polk County Police Department joined in this second interview. They saw that J. P. "had sores on his face, as well as sores on his back. [J. P.] indicated [to the officers] that the sores on his back were cigarette burns. And when [Special Agent Andrews] asked [J. P.] what he meant by 'my daddy,' [J. P.] identified his daddy as being [defendant]. . . . [J. P.] went on to tell [Special Agent Andrews] that the cigarette burns on his back had occurred on a different day than the cigarette burns on his face, and that when his daddy burned him, he [defendant] was saying cuss words. . . ." J. P. also informed Special Agent Andrews that "his daddy told him that if [J. P.] ever told anyone what [defendant] had done, that [defendant] would have [J. P.] taken to YDC and locked up." That evening Special Agent Andrews and Kim Wilson went to the residence of J. P.'s grandmother "not so much to interview [J. P.], but for [Special Agent Andrews] to take photographs of the cigarette burns [he] had observed on [J. P.'s] face and back."

J. P. testified that defendant burned him "on [his] nose and [his] face and [his] back." "It felt weird," and it hurt. J. P. cried and "felt angry . . ." at defendant. J. P. agreed that, at first, he told his mother that the sores were from "poison ivy," but denied that anyone had told him, or told him to say, that defendant burned him.

Special Agent Thomas James Davis, Sr., a polygraph examiner

with the Georgia Bureau of Investigation, identified State's Exhibit 9 as the "CONSENT TO POLYGRAPH EXAMINATION" form that defendant signed before Special Agent Davis administered a polygraph examination, as well as defendant's waiver of rights form. Defendant also stipulated the admissibility of the polygraph results. Special Agent Davis asked defendant the following questions: " 'Did you deliberately cause any of those sores on [J. P.]?' . . . 'Have you ever burned [J. P.] with a cigarette[;] Do you know for sure what caused those sores on [J. P.'s] face and back, and are you lying in any way concerning [J. P.'s] sores?" Defendant's response to each question was "No." Based on his interpretation of defendant's galvanic skin responses, Special Agent Davis made the determination that defendant "was not being truthful when he answered those questions. . . ." Defendant then told Special Agent Davis "that he might have accidently burned [J. P.]."

Robert Joseph Pezzin, M.D., examined J. P. and noticed "some sores on his face and his chest and his arms." J. P. would not answer when Dr. Pezzin asked him how the rash or lesions got started. Dr. Pezzin diagnosed impetigo, which could have been "caused by poison ivy[, or] could . . . also be caused by a burn[.]" In Dr. Pezzin's opinion, poison ivy was not the likely source of the lesions he saw on [J. P.] because "usually with poison ivy, you tend to get some streaking and have some eczema type lesions," which Dr. Pezzin did not detect in the photographs taken of J. P.

The jury found defendant guilty of cruelty to children, as charged. His motion for new trial was denied and this appeal followed. *Held*:

1. In his second enumeration of error, defendant contends the trial court erred in admitting into evidence the photographs of J. P.'s face, neck, and back, showing marks or sores on his body. He argues that because J. P. himself never "identif[ied] each sore on each photograph as a cigarette burn," it was impossible for the jury to determine whether any of the marks shown were actually cigarette burns or merely the natural spread of impetigo. From this, he concludes that neither the necessity nor the relevance of the photographs outweighed their prejudicial effect.

We agree with defendant that "relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' However, such considerations are appropriately committed to the trial court's sound exercise of discretion[.]" *Hicks v. State*, 256 Ga. 715, 720 (13) (352 SE2d 762). "A photograph which depicts the victim after autopsy incisions are made or after the state of the body [has been] changed *by authorities* or the pathologist

will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy. A photograph which shows mutilation of a victim *resulting from the crime against him* may, however gruesome, have relevance to the trial of his alleged assailant." (Emphasis supplied.) *Brown v. State*, 250 Ga. 862, 866 (5), 867 (302 SE2d 347). In the case sub judice, Special Agent Andrews took photographs of the sores on J. P.'s body that the child indicated to Special Agent Andrews were cigarette burns caused by defendant. "The gruesome nature of the photographs . . . complained of results entirely from the acts of [defendant], not from any alteration or autopsy by the [S]tate." *Bullard v. State*, 263 Ga. 682, 686 (5) (436 SE2d 647). These photographs were relevant to show the accurate nature and location of the burn marks at the time they were discovered by the authorities. See *Scott v. State*, 250 Ga. 195, 198 (2), 199 (297 SE2d 18). The trial court did not abuse its discretion in admitting these photographs over defendant's objection that this material evidence was more prejudicial than probative.

2. Defendant's first enumeration challenges the sufficiency of the evidence to convict. "On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant (defendant here) no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204); *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381). 'Conflicts in the testimony of the witnesses, including the (S)tate's witnesses, is a matter of credibility for the jury to resolve. (Cits.) As long as there is some (competent) evidence, even though contradicted, to support each fact necessary to make out the (S)tate's case, the jury's verdict will be upheld. (Cit.)' *Searcy v. State*, 236 Ga. 789, 790 (225 SE2d 311)." *Grier v. State*, 218 Ga. App. 637, 638 (1) (463 SE2d 130).

" 'The testimony of a single witness is generally sufficient to establish a fact.' OCGA § 24-4-8." *Dolphus v. State*, 218 Ga. App. 565, 566 (462 SE2d 453). In the case sub judice, J. P. testified that defendant burned him with cigarettes. Photographs of the small circular sores corroborated this assertion. Even though a physician tentatively diagnosed the lesions as impetigo, that physician discredited the innocent explanation of poison ivy as the cause. This evidence, construed to uphold the verdict, was sufficient to authorize the jury's verdict that defendant is guilty, beyond a reasonable doubt, of violating OCGA § 16-5-70 (b) for maliciously causing J. P., a child under the age of 18, excessive physical pain by burning that child repeatedly with a cigarette, as alleged in the special presentment. *Grier v. State*,

257 Ga. 539, 540 (2) (361 SE2d 379).
*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED FEBRUARY 9, 1996.

*Kenneth J. Jones*, for appellant.
*James R. Osborne*, District Attorney, *E. Chandler Barrett*, Assistant District Attorney, *George C. Turner, Jr.*, for appellee.