### A99A0775. JACKSON v. THE STATE.
(519 SE2d 746)

RUFFIN, Judge.

DeWayne Jackson was convicted of armed robbery and aggravated assault. He appeals, contesting the sufficiency of the evidence and contending that the trial court erred in denying his motion for severance and in giving a jury charge. For reasons discussed below, we affirm.

1. On appeal of a criminal conviction, it is axiomatic that

the evidence must be viewed in the light most favorable to the verdict, and the appellant . . . no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Punctuation omitted.) *Ford v. State*, 234 Ga. App. 301-302 (1) (506 SE2d 668) (1998).

Jackson and two co-defendants, Michael Murray and Levi Hodnett, were indicted in connection with a series of robberies that occurred in April 1996. Jackson and Hodnett were charged with the armed robbery of John Kim on April 15, and Hodnett was charged with committing an earlier armed robbery of Kim on April 4. Jackson, Hodnett, and Murray were each charged with aggravated assault with the intent to rob Anjula Charles on April 15. Hodnett and Murray were charged with the armed robbery of Rochelle Cox on April 15. Hodnett was charged with aggravated assault of Gina Lee on April 15 and with armed robbery of Alex Crawford on April 15. Hodnett pled guilty to the two armed robberies of John Kim and the aggravated assaults on Gina Lee and Anjula Charles, and the remaining charges against him were dead-docketed. Jackson and

Murray were jointly tried on the charges against them and were found guilty on all counts.

### Armed Robbery of John Kim

John Kim testified that, on April 15, 1996, he was working at the Fame Beauty Supply store in DeKalb County. About noon, a man came into the store wearing a baseball cap, a blue and white jogging suit, and silver sunglasses with holes on the side. Kim assumed that this individual was alone. After looking at a product shelf, the man complained to Kim that one of the products was too expensive. As Kim walked over to help him, the man said, "Open up the register, this is a robbery." At that point, Kim turned around and saw a second individual standing near the door and holding a gun on one of Kim's employees. Kim testified that he recognized the gunman because he had robbed the store earlier that month. Kim gave the man with the sunglasses all the money in the cash register, and the two men left. About two weeks after the robbery, Kim was shown a photographic lineup by the police and identified Jackson as the man with the sunglasses. Kim identified Jackson at trial as the individual he had picked out of the lineup. Although Kim did not identify the gunman, Levi Hodnett pled guilty to armed robbery in connection with the April 15 incident as well as the previous robbery.

Jackson, who was 16 years old at the time of the incident, testified that he was living with his grandmother at that time and was not enrolled in school. Hodnett was staying with Jackson's mother at the time. Jackson claimed that, at about 11:00 a.m. on April 15, he went to the Hamilton Alternative School with his mother and sister, where they had an appointment to see about enrolling him in the school. Jackson testified that his mother met with an administrator named "Mr. Houdini, Murfurdini . . . or something like that." After about 30 minutes, they returned to the home of Jackson's mother for a few minutes before going to the welfare office to pick up food stamps. However, because the line was too long, they went to have lunch. Afterwards, they returned to the welfare office and Jackson's mother got her food stamps. They then went grocery shopping and returned to the mother's house at about 2:00 p.m. According to Jackson, Hodnett was at the house when he returned. Jackson denied that he had ever been to the Fame Beauty Supply store.

Jackson's mother and sister also testified, supporting Jackson's alibi defense. However, although the mother stated that she and Jackson met with the principal and a coordinator at the Hamilton Alternative School, she could not recall their names. Jackson did not call any witnesses from the school to corroborate his alibi claim.

### Aggravated Assault of Anjula Charles

Anjula Charles, part owner of the Lotto Grocery Store, testified that on the afternoon of April 15, 1996, Jackson and another man, identified as Hodnett, entered the store and asked if her husband was in. The two men left without buying anything, but returned later that evening with a third individual, Michael Murray. Jackson tried to buy a bag of chips and a soda with food stamps, but Charles' son Ray, who was also working at the store, said the store did not accept food stamps. Jackson paid cash for the items and then stood next to the counter. Charles testified that Jackson was "just standing," and did not appear to be leaving the store. Murray and Hodnett got into an argument with Charles and her son when they refused to sell them cigarettes. Hodnett then pulled a gun and said, "Give us the money." Charles screamed and told her son to push the alarm button. He did so, and the three men then ran out of the store together. Jackson was wearing a white and dark color warmup suit, a white baseball cap, and silver sunglasses with holes on the sides during the robbery. Charles' son testified that Jackson did not ask Hodnett what he was doing or ask him to stop when he pulled out the gun.

Jackson testified that, after he had returned to his mother's house at about 2:00 p.m., he and Hodnett went to Charles' store to buy beer. When Charles told them she could not sell them beer because of their age, they told her that her husband let them buy beer and then left the store. Jackson testified that later that evening, he asked a friend, Marcus Holt, to drive him to his girlfriend's house. On the way, they stopped at Charles' store and Jackson went in to buy some chips and a soda. Jackson testified that, while he was paying for these items, Hodnett and Murray came into the store. Murray greeted Jackson, saying, "What's up, Bird? What's up?" After Jackson paid for his items and started to leave the store, he heard Hodnett arguing with Charles. Jackson said that he began to laugh and then saw Hodnett pull out a handgun. Jackson saw Charles' son reach under the counter and heard Murray say, "They fixing to pull out a gun." According to Jackson, Murray pushed him and they ran out of the store. Jackson said that he did not leave with Hodnett and Murray after the robbery, but went to his girlfriend's house. Holt and Jackson's girlfriend corroborated Jackson's testimony. Holt testified that Jackson was "like a little brother to me."

A videotape of the incident recorded by the store's security camera showed that Jackson entered the store about 25 seconds before the other two men. All three men approached the door from the same direction. Although the robbery itself is not shown on the videotape, the tape shows the three men running from the store together about four minutes after they arrived.

With respect to the armed robbery of John Kim, the evidence was clearly sufficient to support Jackson's conviction. Kim positively identified Jackson in a photographic lineup as the individual who had robbed him. See *Harper v. State*, 213 Ga. App. 444, 445-446 (1) (445 SE2d 303) (1994) (pre-trial identification sufficient to support conviction, notwithstanding failure to make independent identification at trial). Moreover, the robber's clothing and distinctive sunglasses matched those worn by Jackson later that day during the robbery of Charles' store. See *Simonds v. State*, 231 Ga. App. 692, 693-694 (2) (499 SE2d 744) (1998) (upholding conviction based on pretrial identification and other corroborating evidence). Although Jackson raised an alibi defense through his own testimony and that of his mother and sister, "the jury was not bound to accept the evidence introduced of alibi as true; the jury determines the credibility of the witnesses and weight to be given their testimony." (Punctuation omitted.) *Champion v. State*, 192 Ga. App. 43 (1) (383 SE2d 565) (1989). The jury could have found it significant that Jackson called no unbiased witnesses from the Hamilton Alternative School to corroborate his alibi claim. Accordingly, there was sufficient evidence for the jury to conclude that Jackson was guilty of the armed robbery. See *Brundidge v. State*, 184 Ga. App. 860 (1) (363 SE2d 66) (1987) (upholding conviction based on pre-trial identification, despite alibi evidence); *Lawson v. State*, 214 Ga. App. 464, 465 (1) (448 SE2d 14) (1994) (credibility of alibi and identification evidence are for jury); *Jackson v. State*, 226 Ga. App. 604, 606 (2) (487 SE2d 142) (1997).

With respect to the aggravated assault on Anjula Charles, the jury was authorized to reject Jackson's claim that he was simply present during the commission of the crime by Hodnett and Murray. It is true that mere presence at the scene of a crime is not sufficient to convict one of being a party thereto. However, "presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Punctuation omitted.) *Cummings v. State*, 227 Ga. App. 564, 566 (489 SE2d 370) (1997). In this case, there were several factors that could have led the jury to believe that Jackson was more than merely present during the robbery.

First, the jury could have considered the fact that Jackson and an accomplice, presumably Hodnett, had committed an armed robbery earlier in the day as evidence of Jackson's guilty intent. The two incidents were similar in that Jackson entered the store first in both cases and was followed by the gunman. See *Gilliam v. State*, 245 Ga. 708, 709 (1) (267 SE2d 8) (1980) (evidence of separate crime committed the same day admissible to show state of mind, criminal intent, and that defendants were together on crime spree).

Second, the jury could have focused on Jackson's actions at the

store, as caught on tape and described by witnesses, in finding guilty intent. After Hodnett pulled the gun, Jackson did not express any surprise or ask Hodnett to stop. Although this fact alone may not be sufficient to support a conviction, it is a factor the jury could have considered in assessing the credibility of Jackson's testimony that he was not with Hodnett and Murray at the time of the robbery. In addition, the jury could have taken Jackson's flight from the store, in the company of Hodnett and Murray, as evidence of his guilty intent. Our Supreme Court has held that "[t]he fact that a suspect flees the scene of a crime points to the question of guilt in a circumstantial manner." *Renner v. State*, 260 Ga. 515, 517 (3) (b) (397 SE2d 683) (1990).[1] "[F]light is circumstantial evidence of consciousness of guilt; the weight to be given such evidence is for the jury to decide." (Punctuation omitted.) *Okongwu v. State*, 220 Ga. App. 59, 61 (1) (467 SE2d 368) (1996). Under all of the circumstances, the jury was authorized to conclude that Jackson was a party to the crime of aggravated assault with the intent to rob.

2. The first witness at trial, Rochelle Cox, testified about a robbery of the Colonial Bakery store on April 15, 1996. Hodnett and Murray were charged with this crime, but Jackson was not charged. Cox testified that at about 12:30 p.m., two men came into the store. One of the men started to purchase cookies, but complained that the price was too high after Cox had rung up the purchase. Cox rang up the purchase a second time and opened her cash register. At this point, the second individual pulled out a gun and demanded the money in Cox's cash register. Both men took money and food stamps from the cash register and then left the store. After the incident, Cox was shown a photographic lineup by the police and identified a photograph of Murray as the individual without the gun. At trial, however, when asked if this individual was in the courtroom, Cox pointed to Jackson instead of Murray, although neither side remarked on this discrepancy at the time.[2]

At the close of the State's evidence, Jackson's attorney moved to sever his trial from the charges against Murray. He stated that, because of Cox's identification, Murray's attorney was likely to argue at closing that Jackson, and not Murray, was the gunman's accomplice in the Colonial Bakery store, although Jackson had not been charged with the crime. The trial court denied the motion, but

---

[1] However, the Supreme Court in *Renner* held that "while the state may offer evidence of and argue flight, it shall be error for a trial court in a criminal case to charge the jury on flight." Id. at 518 (3) (b).

[2] Cox did not identify Jackson by name, but pointed to the defendant "with the white shirt on." Murray was apparently wearing a green shirt during the trial, and Jackson a white shirt.

instructed the jury at the close of evidence that Jackson was not charged with the Colonial Bakery robbery and that the jury "should not infer anything hurtful to Mr. Jackson because of the witness Cox's testimony."

In ruling on a motion to sever,

> the trial judge must examine each case individually and exercise his discretion in ruling on the motion. That decision will not be disturbed unless appellant shows an abuse of discretion. The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process. In exercising its discretion, the court must consider three factors: (1) Whether a joint trial will create confusion of evidence and law; (2) whether there is danger that evidence implicating one defendant will be considered against the other, despite cautionary instructions to the contrary; and (3) whether the co-defendants will press antagonistic defenses. On appeal, a defendant must show "clear prejudice" from denial of a motion to sever.

(Citations and punctuation omitted.) *Morgan v. State*, 226 Ga. App. 624, 625 (2) (487 SE2d 420) (1997).

Pretermitting whether the motion to sever was timely, Jackson has not shown that he suffered clear prejudice from the denial of the motion. The only argument presented by Jackson at trial in support of the severance motion was that the jury might conclude that he, and not Murray, was the gunman's accomplice in the Colonial Bakery robbery based on Cox's misidentification. However, the trial court instructed the jury that it was not to draw any hurtful inferences against Jackson from Cox's testimony, and the jury in fact convicted Murray of the crime, indicating that it believed Cox had merely pointed to the wrong defendant. Accordingly, the trial court did not commit reversible error in denying the motion. See *Morgan*, supra.

Jackson also contends that the trial court erred in sua sponte giving the curative instruction to the jury. Although Jackson reserved objections to the trial court's charge, we note that the court informed Jackson's attorney that it would not give the curative instruction if he did not want it to. In response, Jackson's attorney merely stated that he preserved his motion for severance. Regardless of whether Jackson waived any right to complain of the instruction, however, he makes no showing on appeal as to how he was harmed by the instruction. Although Jackson states that the instruction

reemphasized Cox's testimony, the jury in fact convicted Murray of the crime, indicating that it believed Murray, and not Jackson, was the gunman's accomplice. Because Jackson has shown no harm from the giving of the instruction, this enumeration does not present a basis for reversal. See *Watson v. State*, 235 Ga. App. 381, 386 (2) (509 SE2d 87) (1998).

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JUNE 24, 1999 —
RECONSIDERATION DENIED JULY 13, 1999.

*Lynch, Spears & Shuman, John H. Tarpley, Dwight L. Thomas, Jo Ann Claudrick*, for appellant.

*J. Tom Morgan, District Attorney, Noah H. Pines, Maria Murcier-Ashley, Assistant District Attorneys*, for appellee.