S05A1990. JOYNER v. THE STATE.
(622 SE2d 319)

THOMPSON, Justice.

Elizabeth Joyner was convicted by a jury of felony murder, armed robbery, and burglary, in connection with the death of William Wright.[1] On appeal, Joyner asserts that the evidence was insufficient to support her convictions because she lacked the criminal intent necessary to commit the crimes, and that the trial court erred in admitting a videotape and photographs depicting the victim's decomposing body. Finding no error, we affirm the convictions. But because Joyner was improperly sentenced for both felony murder and the underlying offense of armed robbery, we vacate the conviction and sentence for armed robbery.

Elizabeth Joyner and her boyfriend, Gregory Baker, encountered Christopher Reid at a state park in Reidsville, Georgia. Baker and Reid had been acquaintances for several years. In Joyner's presence, the two men discussed going to "hit a lick" or commit a robbery. They selected William Wright, a 71-year-old bar proprietor, as the victim

---

[1] The crimes took place on July 3, 2002. Joyner was indicted on August 6, 2003, and charged with felony murder (three counts), armed robbery, and burglary. Trial was held on July 14, 2004. A jury found Joyner guilty of felony murder while in the commission of an armed robbery, armed robbery, and burglary. She was sentenced to life imprisonment for felony murder, and concurrent terms of 15 years each for armed robbery and burglary. A motion for new trial was filed on August 2, 2004, and was denied on July 13, 2005. A notice of appeal was filed on August 3, 2005. The appeal was filed in the Court of Appeals and was transferred to this Court by Order dated August 11, 2005. On October 3, 2005, Joyner submitted the case for a decision on briefs.

because they believed he would have money. According to Reid, Joyner was "right there" while the plan was being hatched, and she "knew everything that was going on."[2]

Joyner drove Baker and Reid to Reid's home, where Reid obtained a gun, and displayed the gun to her and to Baker. Joyner continued to drive the two to Baker's home where Reid sawed off a shotgun and told the others that it was for use in the robbery. They wound up at Joyner's home where they consumed alcohol and practiced shooting Reid's gun.

After dark, Reid and Baker told Joyner "it was time," and she drove the others to Wright's bar. Baker's sawed-off shotgun was in the front passenger seat, visible to Joyner. When they found that the bar was closed, they decided to go to Wright's home. Joyner was the driver and Baker and Reid instructed her to "wait down the road." She dropped the two men off and remained in the car.

Baker and Reid struck the victim and forced their way into his home at gunpoint. They bound him with duct tape, stole a shotgun, money, and Wright's identification, and left the premises. Joyner picked up Reid and Baker a short distance from Wright's home, and the three went to Baker's house. There the two men divided the proceeds of the robbery and discussed with Joyner what had transpired during commission of the crime. Joyner continued to drive them to various locations that evening, stopping at a Huddle House for food, and then to a motel where Joyner dropped off Reid.

Reid met Keith Calkins at the motel and he informed Calkins that there were still "guns and stuff" at Wright's house. Reid and Calkins walked to Wright's house from the motel, where they stole a .22 caliber rifle, Wright's keys, and wristwatch.

Wright's bound and decomposing body was discovered several days later. The cause of death was cardiac arrhythmia following a violent struggle, complicated by atherosclerotic cardiovascular disease and blunt-force trauma to the chest.

1. Joyner submits that the trial court erred in denying her motion for directed verdict of acquittal because there was no competent evidence that she shared a criminal intent with the perpetrators.

The test set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) is the proper standard of review when the sufficiency of the evidence is challenged via a motion for directed verdict of acquittal. *Stansell v. State*, 270 Ga. 147 (1) (510 SE2d 292) (1998). Under that standard, this Court reviews the evidence in a

---

[2] Reid pled guilty to murder and other crimes in connection with the robbery and death of William Wright. Reid testified at Joyner's trial.

light most favorable to the verdict and defers to the jury's assessment of the weight and credibility of the evidence. *Jackson v. Virginia*, supra.

> OCGA § 16-2-20 (a) provides: "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (b) (3) goes on to provide that one is "concerned in the commission, of a crime" if he, among other things, "[i]ntentionally aids or abets in the commission of the crime. . . ." [Cits.] While an individual's presence when a crime is committed will not be sufficient, in and of itself, to convict that individual as a party to the crime, if the individual is present and assists in the commission of the crime or shares in the criminal intent of the actual perpetrator of the crime, the individual may be convicted as a party to the crime. [Cit.] Further, "criminal intent may be inferred from conduct before, during, and after the commission of the crime." [Cit.]

*Grace v. State*, 262 Ga. 746, 748-749 (4) (425 SE2d 865) (1993).

Reid's testimony was corroborated by two statements Joyner gave to the investigating officers in connection with the death of William Wright. Joyner admitted: being present when Baker and Reid concocted the plan to "hit a lick"; driving Reid and Baker to Reid's house; being present when Reid sawed off the shotgun; dropping off Reid and Baker near Wright's home; picking them up as prearranged; seeing them "flash" money they previously did not have; dropping Reid at the motel; and hiding one of the weapons after the crime had been committed.

Considering the evidence, both direct and circumstantial, in a light most favorable to the verdict, we conclude that a rational trier of fact could have found Joyner guilty beyond a reasonable doubt as a party to the crimes charged. *Jackson v. Virginia*, supra.

2. There is no merit to the assertion that a directed verdict of acquittal should have been granted because the State failed to establish whether blunt-force trauma to the victim occurred during the first robbery or during the second, for which Joyner was not charged. The evidence showed that Wright was struck and bound during the first robbery. Thus, the jury was authorized to conclude that those injuries precipitated the cause of death — cardiac arrhythmia *complicated* by blunt-force trauma.

3. At the beginning of the State's case-in-chief, the prosecutor sought to introduce a videotape showing Wright's body when it was discovered at the crime scene. Defense counsel objected on the ground

that the evidence was irrelevant "until there's some evidence introduced to show that [Joyner] was there or had something to do with" the crimes. The State responded that the evidence of Joyner's participation "will be abundantly clear" from subsequent evidence.

" 'The admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court whose decision will not be disturbed on appeal absent a clear abuse of discretion. [Cit.]' " *Holmes v. State,* 275 Ga. 853, 854 (3) (572 SE2d 569) (2002). As the evidence clearly established Joyner's participation in the crimes, we find no abuse of the court's discretion in overruling her relevancy objection.

Joyner subsequently objected to the videotape on the further grounds that the depiction of the victim's body, which was filmed in a state of decomposition, was inflammatory and lacked evidentiary value. Again, we find no abuse of discretion. See *Bullard v. State,* 263 Ga. 682, 686 (5) (436 SE2d 647) (1993) (gruesome nature of the videotape which results entirely from the acts of the appellant, not from any alteration or autopsy by the State, was properly admitted).

4. Joyner also objected on relevancy grounds to the admissibility of photographs of the body taken at the Georgia Bureau of Investigation prior to autopsy. However, "[a] photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome, have relevance to the trial of his alleged assailant." *Brown v. State,* 250 Ga. 862, 867 (5) (302 SE2d 347) (1983). Also, photographs showing alterations to the body which result from the " 'combined forces of the murderer and the elements' " are admissible. *Whitaker v. State,* 275 Ga. 521, 523 (2) (570 SE2d 317) (2002), quoting *Klinect v. State,* 269 Ga. 570, 574 (4) (501 SE2d 810) (1998). For the reasons stated in Division 3, supra, we find no abuse of the trial court's discretion in rejecting Joyner's relevancy objection.

5. Because armed robbery was charged as the felony underlying Joyner's conviction for felony murder, the armed robbery merged into the felony murder conviction. " 'Accordingly, a separate conviction and sentence on that [armed robbery] count was not authorized and must be vacated.' " *Wyman v. State,* 278 Ga. 339 (1) (602 SE2d 619) (2004).

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED NOVEMBER 21, 2005.

*Donald O. Nelson,* for appellant.

*Tom Durden, District Attorney, Joe G. Skeens, Assistant District Attorney, Thurbert E. Baker, Attorney General, Laurie M. Hughes, Assistant Attorney General,* for appellee.