A08A1769. CORNETTE v. THE STATE.
A08A1770. WEBB v. THE STATE.
(673 SE2d 531)

MIKELL, Judge.

A Grand Jury of the Superior Court of Bartow County indicted Trinity Lee Cornette, Michelle Denise Webb, Robert Danner, Christopher Danner, Charles Cowart, and Miriam Green as parties to the crimes of kidnapping (Count 1), false imprisonment (Count 2), aggravated assault (Count 3), possession of a firearm during the commission of a crime (Count 4), possession of methamphetamine (Cornette, the Danners, and Cowart only) (Count 5), possession of a device to commit a crime (Count 6), and possession of a firearm by a convicted felon (Green only). After a jury trial in which all of the defendants were tried, with the exception of Green, who pled guilty before the trial, Cornette was convicted of Counts 1, 2, 3, and 6, and Webb was convicted of Counts 1, 2, and 3.[1] Cornette and Webb appeal their convictions. Cornette challenges the sufficiency of the evidence as to each conviction, and Webb seeks reversal of her convictions for kidnapping and aggravated assault. We consolidate these appeals for disposition in a single opinion and affirm the appellants' convictions.

On appeal of a criminal conviction, this Court's duty is to determine whether, after viewing the evidence in the light

---

[23] See id. at 784-785 (1).

[1] Co-defendants Robert Danner, Christopher Danner, and Charles Cowart were acquitted of all charges, with the exception of Robert Danner's conviction of possession of methamphetamine.

> most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The appellant no longer enjoys the presumption of innocence. Moreover, the Court does not re-weigh the evidence or resolve conflicts in testimony, but rather defers to the jury's assessment of the weight and credibility of the evidence.[2]

So viewed, the evidence shows that on June 22, 2005, the victim, Carrie Michelle Gentry, visited the home of Robert and Chris Danner, both of whom she had known for approximately a year. Gentry testified that she went to the Danners' home because a friend told her that Robert Danner, whom she had previously dated, wanted to talk to her.

Gentry testified that when she pulled into the driveway, Tommy Cowart was outside, and she asked him if Robert Danner were in the house; that Tommy entered the house and Chris Danner came out screaming at her about mentioning his name during the investigation of the murder of Steve Lancaster;[3] and that Robert Danner came out of the house with Wendy Smith, and they all began to yell at her as she sat in her car. Gentry told them that she did not know what they were talking about. When they continued to detain her, Gentry told Robert that she was on her way to visit another friend whom she had told to call the police if she did not arrive by 10:00. Robert told her to leave.

As Gentry began to back out of the driveway, Chris Danner ran to the passenger window of her car and asked her again why she mentioned his name during the investigation. She told him that she had not mentioned his name, then saw Leslie Green and appellant Cornette pull into the driveway. Green approached the passenger side of the car and pointed a gun at Gentry, telling her that they needed to talk. Gentry recalled that Cowart and Cornette were outside when Green brandished the weapon, but Chris Danner had gone into the house.

According to Gentry, Green got into Gentry's vehicle, threw her keys into the woods, and told her to get out of the car, remarking that it was time that someone made an example out of her. Green yelled at Cornette to get her bag from her car, and Cornette complied. Cornette came back with duct tape and handed it to Green, who used it to tape Gentry's hands, arms, and eyes. Cornette then led Gentry to the back seat of Green's vehicle. While in the back seat, Gentry lifted the duct tape and saw appellant Webb walk by the car. Gentry

---

[2] (Citations and punctuation omitted.) *Walker v. State*, 282 Ga. 406 (651 SE2d 12) (2007).

[3] Lancaster was the brother of co-defendant Green.

also overheard Green mention taking her to a field.

Cornette, who saw Gentry lift the tape from her eyes, pulled her out of the car, took her into his house, and cut the duct tape from her hands. Cornette then tied Gentry's hands behind her back with a string and took her outside to Green's car, which Webb had pulled underneath the garage. Green then grabbed Gentry by the hair and led her to the trunk of the car, holding the gun. Green told her to get in the trunk as Webb stood nearby. Gentry testified that the last persons she saw before the trunk was closed were Green and Webb. Once she was in the trunk, Gentry heard four doors shut and the voices of Green, Webb, Cornette, and Cowart. Approximately 30 to 45 minutes later, Gentry heard police sirens. Gentry kicked the back of the trunk to let the police know where she was and was released from the trunk by them at approximately 10:45 p.m.

Officer Kevin Hubbard of the Bartow County Sheriff's Office testified that at approximately 10:05 p.m. on the evening in question, he received a call from his dispatcher to respond to a kidnapping in progress. When he arrived at the scene, Officer Hubbard found two females standing outside the car, Green and Webb. Officer Hubbard drew his weapon and ordered Green and Webb to the ground, then heard someone beating in the trunk area of the vehicle. At that time, no other individuals were outside. Officer Hubbard detained Robert Danner, Cornette, and Cowart as they exited the house. Once the backup officers arrived, one of them secured the keys to Green's vehicle, which were lying near Green on the ground and opened the trunk. Hubbard testified that Gentry was inside the trunk and was bound with zip-tie straps and duct tape. Officer Hubbard also testified that they found a loaded .38 caliber revolver in the glove box of Green's car.

### Case No. A08A1769

Cornette was charged as a party to the crimes of kidnapping, false imprisonment, aggravated assault with a firearm, and possession of device to commit a crime. On appeal, he argues that the evidence was insufficient to support each conviction. Cornette also asserts as error the trial court's denial of his motion for directed verdict and for judgment notwithstanding the verdict on the aggravated assault charge. We find that the evidence sufficiently supported Cornette's convictions.

1. *Kidnapping and false imprisonment.* Cornette argues that the evidence of his participation in the events at issue did not support his convictions for kidnapping or false imprisonment.

Kidnapping occurs when a person abducts or steals away any person without lawful authority or warrant and holds that person

against his or her will.[4] Here, the evidence shows that Cornette moved Gentry to the back of Green's vehicle, then took her into the Danners' house, tied her hands behind her back with string, and escorted her to the car where she would be placed in the trunk. Either the movement of Gentry from the car to the house or from the house to the garage against her will by Cornette was sufficient to support his conviction for kidnapping.[5] This same evidence supports Cornette's conviction for false imprisonment, which occurs "when one person detains another in violation of that person's personal liberty and without legal authority. OCGA § 16-5-41 (a)."[6] Gentry testified that Cornette took her into the house and tied her hands against her will. This evidence, alone, sufficiently supported Cornette's conviction for false imprisonment.[7]

2. *Possession of a device to commit crime.* Cornette also challenges his conviction of possession of a device to commit a crime. The indictment provided that Cornette and the other parties had under their control and possession a roll of duct tape. Gentry testified that Cornette gave Green duct tape from Green's bag, which Green used to restrain Gentry. The testimony of a single witness is sufficient to establish a fact,[8] but here, we have additional evidence that establishes Cornette's guilt. Cornette, who also testified at trial, admitted that he gave Green the duct tape and stated that he placed the duct tape over Gentry's eyes at Green's instruction. Accordingly, there was ample evidence to support the jury's finding that Cornette was guilty beyond a reasonable doubt of this offense as well.

3. *Aggravated assault.* Cornette argues that his aggravated assault conviction should be reversed for insufficient evidence and that the trial court should have granted his motion for directed verdict on this charge.[9] As the standard of review on appeal is the

---

[4] (Punctuation omitted.) *Mercer v. State*, 289 Ga. App. 606, 607 (1) (658 SE2d 173) (2008). See OCGA § 16-5-40 (a).

[5] See *Garza v. State*, 284 Ga. 696, 701-702 (1) (670 SE2d 73) (2008) (set forth standard for determining the sufficiency of evidence of asportation).

[6] *John v. State*, 282 Ga. 792, 795 (6) (653 SE2d 435) (2007).

[7] See *Snelson v. State*, 286 Ga. App. 203, 209 (4) (648 SE2d 647) (2007) (evidence that defendant held victim on the floor of her home was sufficient to support false imprisonment conviction); *Felton v. State*, 270 Ga. App. 449, 452 (2) (606 SE2d 649) (2004) (evidence that defendant restrained victim supported false imprisonment conviction).

[8] See OCGA § 24-4-8.

[9] Cornette also argues that the trial court should have granted his motion for judgment notwithstanding the verdict in light of his acquittal of the offense of possession of a firearm during the commission of a crime. However, a motion for a judgment of acquittal notwithstanding the verdict may not be brought pursuant to Georgia law. *Rhyne v. State*, 209 Ga. App. 548, 550-551 (1) (434 SE2d 76) (1993). Accord *Rivers v. State*, 229 Ga. App. 12, 13 (2) (493 SE2d 2) (1997).

same for these alleged errors,[10] "i.e., under the rule of *Jackson v. Virginia*,[11] whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense[,]"[12] we address them simultaneously.

Cornette argues that there was no evidence that he ever possessed Green's gun, pointed it at Gentry, or had knowledge that Green was going to brandish a weapon. Additionally, Cornette maintains that his acquittal on the charge of possession of a firearm during the commission of a crime mandates the reversal of his aggravated assault conviction. We address the latter argument first.

In *Milam v. State*,[13] our Supreme Court adopted the reasoning of the U. S. Supreme Court in *United States v. Powell*[14] and abolished the rule against inconsistent verdicts.[15] "Georgia courts generally will not look behind the jury's decision to convict on certain counts and acquit on other counts. This is because a conviction on one count and acquittal on another related count may simply reflect a compromise or lenity by the jury."[16] Accordingly, Cornette's argument fails.

We also reject Cornette's argument that the evidence was insufficient to convict him as a party to the crime of aggravated assault because he did not point the gun at Gentry or know that Green possessed a gun. Pursuant to OCGA § 16-2-20,

> (a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. (b) A person is concerned in the commission of a crime only if he: (1) Directly commits the crime; (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

---

[10] See *Hester v. State*, 282 Ga. 239, 240 (2) (647 SE2d 60) (2007) (standard of review for denial of motion for directed verdict of acquittal is same as for determining sufficiency of evidence to support a conviction).

[11] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[12] (Citations omitted.) *Dorsey v. State*, 279 Ga. 534, 542 (3) (615 SE2d 512) (2005).

[13] 255 Ga. 560, 562 (2) (341 SE2d 216) (1986).

[14] 469 U. S. 57, 64-66 (105 SC 471, 83 LE2d 461) (1984).

[15] *King v. Waters*, 278 Ga. 122-123 (1) (598 SE2d 476) (2004). See also *Williams v. State*, 270 Ga. App. 424, 426 (2) (606 SE2d 871) (2004).

[16] (Citation and punctuation omitted.) *Kelley v. State*, 279 Ga. App. 187, 191 (2) (630 SE2d 783) (2006). In this case, like the instant case, the defendant was convicted as a party to the crime of aggravated assault with a deadly weapon but acquitted of possession of a firearm during the commission of a crime. Id. at 188, 191.

Although an individual's presence when a crime is committed, alone, will not be sufficient to convict that person as a party to a crime,[17]

> if the individual is present and assists in the commission of the crime or shares in the criminal intent of the actual perpetrator of the crime, the individual may be convicted as a party to the crime. Further, criminal intent may be inferred from conduct before, during, and after the commission of the crime.[18]

Here, Cornette testified that three days before the incident, he was at the Danners' home with Robert Danner, Cowart, Webb, and Green, all of whom were questioning him about Green's brother's murder. According to Cornette, Robert Danner told him that Gentry said that Cornette was going to the police to report that Robert and Chris Danner had killed Lancaster. On the next night, Cornette testified that he, Green, and Chris Danner went to Paulding County to look for Gentry because Green wanted to talk to her about the murder. On the following night, which was the night before the incident occurred, Cornette and Green left the Danners' home together to discuss the information that Cornette would report to the police the following morning about Lancaster's death. On that next morning, Cornette talked to Cherokee County officers and shared information with the officers about the murder that involved Gentry. After the meeting, Cornette and Green remained together until they went to the Danners' home that evening when the incident at hand took place.

When Cornette and Green arrived, Cornette saw Gentry sitting in her car and identified her to Green, at which point Green took a gun out of her purse and approached Gentry. Cornette maintained that he did not know that Green had a gun. However, he admitted that he was the person who gave Green the duct tape, explaining that he thought Green was simply going to restrain Gentry and force her to make a confession on tape. Cornette also testified that he placed duct tape over Gentry's eyes at Green's request; that he asked Gentry to exit her car; that he removed zip-ties from Green's trunk at her command; and that he took Gentry into the house and then restrained her hands with zip-ties. Cornette also testified that he removed his personal items from the trunk of Green's car before Gentry was ordered to get in the trunk. Based on Cornette's testimony, alone, the jury had more than sufficient evidence from

---

[17] *Jackson v. State*, 239 Ga. App. 77, 80 (1) (519 SE2d 746) (1999).
[18] (Citation and punctuation omitted.) *Joyner v. State*, 280 Ga. 37, 39 (1) (622 SE2d 319) (2005).

which it could infer that Cornette was a party to the crime of aggravated assault upon Gentry.[19]

### Case No. A08A1770

Webb argues that there was insufficient evidence to support the jury's finding that she was guilty as a party to the crimes of kidnapping and aggravated assault and that therefore, the trial court's denial of her motions for directed verdict on these offenses was erroneous. However, the evidence shows that prior to the night in question, Green talked with several people, including Webb, about her brother's murder. Cornette testified that when he was being questioned about the murder at the Danners' home, Webb was present. Additionally, Cornette testified that Webb was present during the incident and agreed to follow Green in Gentry's car after Gentry had been locked in Green's trunk. Gentry testified that Webb moved Green's car closer to the house and stood by as Green forced Gentry into the trunk. Therefore, despite Webb's arguments that she was merely present at the scene, there was evidence from which the jury could infer from her conduct before and after the crime was committed as well as her presence at the scene that she was a willing participant, or at the very least, complicit in Green's plan, which authorized Webb's convictions as a party to the crimes of kidnapping and aggravated assault.[20] Accordingly, Webb's enumerated errors fail.

*Judgments affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 10, 2009.

*Brunt, Hood & Lamb, Thomas N. Brunt*, for appellant (case no. A08A1769).

*James E. Goad*, for appellant (case no. A08A1770).

*T. Joseph Campbell, District Attorney, Mickey R. Thacker, Assistant District Attorney*, for appellee.

---

[19] See *Yancey v. State*, 281 Ga. 664, 665 (1) (641 SE2d 524) (2007) (fact that defendant did not actually shoot the weapon used in the crime did not absolve him of guilt as a party to the crime). See generally *Tesfaye v. State*, 275 Ga. 439, 440 (1) (569 SE2d 849) (2002) (defendant need not have possession of weapon to be found guilty of armed robbery).

[20] See *Hill v. State*, 281 Ga. 795, 797 (1) (a) (642 SE2d 64) (2007). See also *Sapp v. State*, 280 Ga. App. 592, 594 (634 SE2d 523) (2006) (if there is sufficient evidence that the actors had associated themselves together in a common design to do an unlawful act, any act done in pursuit of that association by any one of the actors would, in legal contemplation, be the act of each of them).