A09A1182. PAYNE v. THE STATE.
(687 SE2d 851)

BERNES, Judge.

Following a jury trial, Kelvin Dennis Payne, Jr., was convicted of kidnapping, battery, theft by taking, and several other offenses. He contends that the trial court erred in denying his motion for directed verdict of acquittal on the charges of kidnapping and theft by taking. We disagree and affirm.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found Payne guilty of the charged offenses beyond a reasonable doubt. Id. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence presented at trial showed that on the day in question, Payne asked the victim, with whom he had previously been in a relationship, to pick him up from a friend's home. Prior to the victim's arrival, Payne told the friend that he was angry with the victim and that he was "going to drag th[at] bitch." The friend understood Payne's comment to mean that Payne intended to "fight" the victim.

When Payne got into the victim's car, he told her that he needed to "pick up some money" and directed her to what appeared to be an abandoned home. Payne instructed the victim to pull around to the back of the house and ordered her to accompany him inside. After she refused, Payne attacked her; he got on top of her, choked her, slapped her, and punched her in the face "too many [times] to count."

Payne did not stop hitting the victim until he thought he had rendered her unconscious. The victim, however, was feigning unconsciousness and when Payne ceased his attack, she ran out of the car toward the front of the house and attempted to dial 911 on her cell phone. Payne took the phone from the victim and slammed it against the house, shattering it. He then grabbed the victim's arm and pulled her back to the rear of the house. After ripping off his shirt and threatening to beat her further, Payne ordered the victim back into the car. The victim got into the passenger side of her vehicle.

Payne drove out of the driveway and took a series of left-hand turns. Payne decided that the victim "ha[d]n't had enough" and then drove the car back toward the abandoned house. Believing that Payne was going to kill her, the victim told Payne to "take everything" before she jumped out of the vehicle and ran toward a man and woman sitting on the front porch of a nearby house. The couple permitted the victim to enter their house to call 911.

Payne left in the victim's vehicle but returned a short time later on foot. Payne forced his way into the house that the victim had entered and told the couple that they "didn't want to get involved in this." When Payne noticed a police officer approaching the residence, he told the victim he was "going to kill [her]" and then fled the scene.

The officer observed the victim's injuries and noted that she was

YALE LAW LIBRARY

"really upset" and "very shaken." The victim gave the officer a description of Payne and told him that, although his real name was Kelvin Payne, he would use the name "Trevor Burge" if apprehended. She also took the officer to the abandoned house, where the officer observed both the shattered cell phone and Payne's torn shirt.

A second officer who had come to the scene observed a shirtless man matching Payne's description walking in the neighborhood. As the officer approached him and asked his name, Payne identified himself as "Trevor Burge" before fleeing.

A neighbor subsequently helped the victim look for her car. They discovered it at a nearby residence, that of Payne's cousin. The victim and the neighbor then summoned one of the officers, and all three inspected the car but could not find the keys. The following day, the victim called a towing service to remove the vehicle. When the towing service arrived, the keys had been placed back in the ignition of the car.

1. Payne argues that he was entitled to a directed verdict of acquittal on the kidnapping charge because the state failed to establish the essential element of asportation. We disagree.

"A person commits the offense of kidnapping when [he] abducts or steals away [i.e., asports] another person without lawful authority or warrant and holds such other person against his or her will." OCGA § 16-5-40 (a). The evidence at trial showed that Payne dragged the victim from the front to the rear of the house, forced her to get into the car and then drove a short distance before the victim escaped and jumped out of the car. In order to determine whether the movement of the victim constituted sufficient asportation under the kidnapping statute, we apply the test set forth by the Supreme Court in *Garza v. State*, 284 Ga. 696, 697-699 (1) (670 SE2d 73) (2008). This test assesses four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

Id. at 702 (1).[1] The purpose of the test is to

> assist Georgia prosecutors and courts alike in determining

---

[1] Following *Garza*, the Georgia legislature amended the kidnapping statute "to provide that slight movement is sufficient to prove kidnapping as long as the movement was not incidental to another offense, then further defined what actions would not be incidental to another offense." (Citation and punctuation omitted.) *Wright v. State*, 300 Ga. App. 32, 34 (1),

> whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a criminologically insignificant circumstance attendant to some other crime.

(Citation and punctuation omitted.) Id.

An assessment of the *Garza* factors leads us to conclude that the evidence in this case was sufficient to establish the asportation element of the crime of kidnapping. It is true, as argued by Payne, that the duration of the movement in this case was relatively brief. But Payne's asportation of the victim ended only because the victim escaped and fled from the vehicle in fear for her life. That the movement was unintentionally cut short by the victim's insubordination does not support Payne's argument that the asportation was otherwise inconsequential. See *Wright v. State*, 300 Ga. App. 32, 34 (1) (684 SE2d 102) (2009) (evidence supported kidnapping conviction despite evidence that the movement was of minimal duration). See also *Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009); *Abernathy v. State*, 299 Ga. App. 897, 899 (1) (685 SE2d 734) (2009).

While it is also arguable, as suggested by Payne, that at least some of the movement occurred during the commission of the theft of the victim's car, it was not an inherent part of that separate offense.[2] Payne did not have to force the victim back into the car in order to take it. And contrary to Payne's assertion, his asportation of the victim presented a significant danger to the victim independent of the danger posed by the theft. It isolated her from contact with anyone who may have been able to provide help and further enhanced Payne's control over her. *Wilkinson v. State*, 298 Ga. App. 190, 195-196 (1) (d) (679 SE2d 766) (2009); *Wright*, 300 Ga. App. at 34 (1).

In sum, Payne's conduct toward the victim in this case is simply not the kind that *Garza* was intending to immunize from a prosecution for kidnapping. To the contrary, "the movement in question [was] in the nature of the evil the kidnapping statute was originally intended to address." *Garza*, 284 Ga. at 702 (1). See generally *Dixon v. State*, 300 Ga. App. 183, 184 (1) (684 SE2d 679) (2009); *Wright*, 300

---

n. 1 (684 SE2d 102) (2009). See Ga. L. 2009, p. 331, § 1. The amended statute applies only to crimes committed on or after the revised statute's effective date, July 1, 2009. OCGA § 1-3-4. Because the crime in this case occurred in September 2007, the amended statute is not applicable and the standard set forth in *Garza* applies.

[2] Payne also suggests that the movement was incidental to the battery. However, Payne's battery upon the victim, his striking and choking of her, had already been completed when his kidnapping of the victim commenced.

YALE LAW LIBRARY

Ga. App. at 34 (1); *Abernathy*, 299 Ga. App. at 899 (1); *Cornette v. State*, 295 Ga. App. 877, 879-880 (1) (673 SE2d 531) (2009).

2. Payne further argues that the evidence was insufficient to support his conviction on theft by taking. Specifically, he contends that he took the victim's car with her permission and did not intend to deprive her of it.

> A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated.

OCGA § 16-8-2. "[T]he gravamen of the offense is the taking of the property of another against the will of such other, regardless of whether the property is taken or appropriated and the manner of the taking or the appropriation." (Citation and punctuation omitted.) *Clark v. State*, 138 Ga. App. 266, 269 (4) (226 SE2d 89) (1976). See *Stull v. State*, 230 Ga. 99, 99-100 (1) (196 SE2d 7) (1973). The issue of intent is a jury question, and, once criminal intent at the time of the taking is established, the distinction between a permanent or a temporary intent to deprive becomes irrelevant. *Thomas v. State*, 267 Ga. App. 192, 193 (1) (598 SE2d 913) (2004); *Smith v. State*, 172 Ga. App. 356, 356-357 (2) (323 SE2d 257) (1984).

Although the victim testified that she told Payne to "take everything." prior to escaping in search of help, there was certainly evidence from which a reasonable juror could conclude that Payne had already taken the car and that her subsequent relinquishment of it was not done willingly. And, when Payne drove away and returned on foot only after parking the vehicle at his cousin's house, the jury was authorized to find that he intended to deprive her of its use, if even temporarily. See generally *Thomas*, 267 Ga. App. at 193 (1); *Newton v. State*, 261 Ga. App. 762, 764 (1) (583 SE2d 585) (2003); *Smith*, 172 Ga. App. at 356-357 (2). The evidence was therefore sufficient to support Payne's convictions.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 13, 2009 —
RECONSIDERATION DENIED DECEMBER 10, 2009.

*Peter K. Odom*, for appellant.
*Leigh E. Patterson, District Attorney, Finnis K. Salmon, Assistant District Attorney*, for appellee.