A09A0249. WILKINSON v. THE STATE.
(679 SE2d 766)

BARNES, Judge.
James Dean Wilkinson was convicted of simple battery, aggravated assault, two counts of aggravated battery, and kidnapping with bodily injury. He appeals, contending the evidence against him was

insufficient as to each count, and the trial court erred in failing to merge the offenses. For the reasons that follow, we affirm the convictions.

When considering whether the evidence is sufficient to sustain the verdict, we view the evidence in the light most favorable to the verdict, determining only the sufficiency of the evidence and not its weight or the credibility of witnesses. The appellant is no longer presumed innocent. *Adams v. State*, 217 Ga. App. 532 (1) (458 SE2d 171) (1995). Considered in this manner, the State presented evidence sufficient to sustain Wilkinson's convictions under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Wilkinson and his two co-defendants were charged as parties to these crimes, which arose from a horrific two-day episode of torture. After a lengthy trial, one of Wilkinson's co-defendants, Willie Connor, was acquitted on all counts. The other co-defendant, Lemuel Rouse, was convicted of all counts, and his convictions were affirmed in *Rouse v. State*, 295 Ga. App. 61 (670 SE2d 869) (2008). Wilkinson was convicted of aggravated assault, two aggravated battery counts, kidnapping with bodily injury, and the lesser included offense of simple battery on one of the aggravated assault counts.

Considering the evidence in the light most favorable to verdict, it shows that the victim was a self-confessed crack cocaine addict, living with Wilkinson and Wilkinson's girlfriend in what witnesses described as a crack house. The victim had been working on Rouse's truck, which was parked at Wilkinson's house. On March 3, 2006, at the end of a multi-day drug binge, the victim loaned the truck to someone in exchange for $50 worth of crack cocaine. The victim smoked the crack, had something to eat, and then fell asleep while waiting for the truck to be returned.

Rouse shook the victim awake that evening, eight or ten hours later, with a pistol in one hand and a stick in the other. He was very belligerent, shouting, cursing, and asking about his truck. The victim finally confessed he had loaned the truck to someone and Rouse became more enraged, beating the victim on his shoulder and forearm with the stick and fracturing his wrist, shoulder, and kneecap. Rouse knocked the victim onto the bedroom floor and called for someone to bring him something to tie up the victim. Wilkinson came into the bedroom with green nylon string and a roll of electrical tape and when the victim begged them not to tie him up, Wilkinson said, "You made your bed, now you can sleep in it."

Wilkinson straddled the victim's legs and wound the string around them while Rouse jacked up the victim's arms behind him. Then the two men wrapped the string around the victim's wrists, his neck and back around his bent legs, so that if he tried to straighten them he would choke. Then the men wrapped electrical tape around

the string to hold it in place and dragged the victim into the living room face down. Wilkinson kicked him in the back of his legs, and Rouse ran from the kitchen and kicked the victim in the face as if he were kicking a field goal, breaking his nose and knocking out two teeth.

All night long the men returned from Wilkinson's room intermittently to slap, kick, and torture the victim. At one point, Rouse picked up a propane torch, lit it, and ran it across the victim's ears, hand, and stomach, then heated up some kind of tube and closed the victim's hand around it, causing excruciating pain and "cooking a hole" in his palm. The victim screamed so much the men gagged him. Rouse also tried to cut off the victim's finger with Wilkinson's bolt cutters, but was too high to concentrate properly and the victim succeeded in thwarting him by repeatedly balling up his fist. Rouse finally gave up and just used the bolt cutters to hit the victim on his feet instead. All night long, "the house was crawling with people" but they just looked at him and left. Some of those people testified that they had come to the house for crack, and did not want to incur Rouse's wrath by trying to help the victim or calling the police.

At some point someone covered the victim with a blanket. Eventually Wilkinson's girlfriend gave the victim some water and at dawn insisted that Wilkinson make Rouse take the victim out of the house. Rouse and Wilkinson stretched the victim out and zipped him into a green mummy-style sleeping bag, then dragged him through the front door off the porch and into the back of Rouse's pickup truck. Rouse drove to his house a very short distance away, parked in his garage, and told the victim not to die in the sleeping bag because he wanted to keep it. Rouse took the victim out of the bag and drove to an abandoned box truck in Wilkinson's back yard with the victim still bound in the back of the pickup truck.

Rouse backed up, slid the victim into the box truck, and tied him to some two-by-fours wedged between the floor and ceiling, promising to torture the victim until he died. Rouse then scooped up a nest of fire ants, dumped them onto the victim's back, then stood back and watched while the angry ants bit the victim repeatedly on his neck, arm, armpit, back, and stomach, a sensation the victim described as being eaten alive. Rouse got a phone call from someone asking him to deliver $200 of crack, and said to the caller, "Well, I'm just going to have to kill this m------f----- later. I'll bring it to you." He stacked wooden pallets on the victim's back and left, promising to beat the victim to death when he returned.

The victim began struggling immediately and managed to snatch the two-by-fours loose. With his arms bound behind his back he sawed against a bolt sticking out of the van wall and got the string loose from his hands. His legs were still bound but he knew Rouse

would return soon so he jumped out and hopped across a field to a swampy area where he heard children playing. His cries for help roused a woman who came to her porch, saw the victim, and called the police, who found the victim at the edge of the swamp and took him to the hospital.

The police collected many pieces of evidence corroborating the victim's story. His hands were swollen and blue. In the box truck they found pieces of kite string and electrical tape matching the string and tape wrapped around the victim, partially wedged two-by-fours, pallets, dirt, dead ants, and the bucket used to scoop them up. While executing a search warrant in Wilkinson's house they found blood on the living room carpet, blood splatter on the sofa, a bolt cutter, a propane torch, matching kite string and electrical tape, a wooden handle or stick with a piece of pipe attached to it, and a bloody white blanket in Wilkinson's bedroom closet. They found a blood-stained sleeping bag in Rouse's garage and matched the DNA in the blood to DNA in a sample they took from the victim. In Rouse's bedroom the police found the victim's identification, drug paraphernalia, and ammunition.

Wilkinson and his girlfriend testified, both asserting they had remained in the bedroom all night while Rouse abused the victim, and that Wilkinson never touched the victim but tried to help him by looking for the missing truck. Wilkinson admitted smelling burning hair and both of them admitted hearing Rouse's threats and the victim's cries for help.

1. Wilkinson argues that the State presented insufficient evidence of each count to sustain the convictions. Wilkinson was indicted as a party to each crime, along with co-defendants Rouse and Connor. The evidence as recounted above is sufficient to sustain all of the convictions.

OCGA § 16-2-20 (a) provides, "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." In addition to committing the crime directly, a person is "concerned in the commission of a crime" if he intentionally aids, abets, advises, encourages, or counsels another to commit the crime. OCGA § 16-2-20 (b) (3), (4). Wilkinson told the victim he had made his bed and now had to lie in it, helped Rouse tie up the victim, kicked the victim, and helped Rouse zip him into a sleeping bag and load him into the back of Rouse's pickup truck. Wilkinson participated in this group attack and "is criminally responsible for the injuries inflicted by all parties to the crime even if he personally delivered only one blow." (Citations omitted.) *Cox v. State*, 242 Ga. App. 334, 337 (4) (528 SE2d 871) (2000).

(a) Count 3[1] alleged Wilkinson was a party to the crime of aggravated assault by striking the victim with a baseball bat on his shoulder and knee cap. The jury convicted him of the lesser included offense of simple battery. A person commits the offense of simple battery when he either intentionally makes physical contact of an insulting or provoking nature with someone else or intentionally causes physical harm. OCGA § 16-5-23. Here, the victim told one of the detectives that Wilkinson was in the room when Rouse was striking him with what he testified was a "sawed-in-half bat," after which Rouse directed Wilkinson to retrieve something to tie up the victim. This evidence was sufficient for a rational trier of fact to find Wilkinson guilty beyond a reasonable doubt of being a party to the crime of simple battery. *Jackson v. Virginia*, supra.

(b) In Count 4, Wilkinson was indicted and convicted of being a party to the crime of aggravated assault committed by striking the victim with hands and feet. A person commits aggravated assault when he assaults with a deadly weapon or any object which, when used offensively, is likely to or actually does result in serious bodily injury. OCGA § 16-5-21 (a) (2). In addition to testimony that Rouse took a running kick at the victim's face and voluminous other testimony regarding the blows Rouse struck while Wilkinson was present, the victim also testified that Wilkinson kicked the back of his legs. The evidence was sufficient to sustain the conviction on this count.

(c) In Count 5 the State alleged Wilkinson and his co-defendants were parties to aggravated battery by knocking out the victim's teeth and breaking his wrist and shoulder. In Count 6 the State alleged Wilkinson and his co-defendants were parties to aggravated battery by burning the victim's hand and placing a red ant nest on his body which resulted in numerous bites. "A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." OCGA § 16-5-24 (a). See *Rouse v. State*, supra, 295 Ga. App. at 64. The evidence is sufficient for a rational trier of fact to find Wilkinson guilty of these offenses.

(d) The State in Count 7 alleged Wilkinson and his co-defendants were parties to kidnapping with injury, and Wilkinson simply argues without specificity that the evidence was insufficient to establish each element of the crime. "A person commits the offense of kidnapping when he abducts or steals away any person without

---

[1] Counts 1 and 2 were drawn against Wilkinson's co-defendant Rouse only.

lawful authority or warrant and holds such person against his will," and the Code provides for a sentence of life in prison for kidnapping with bodily injury. OCGA § 16-5-40 (a), (b) (4). The evidence established all of these elements.

In November 2008, the Supreme Court of Georgia held that the asportation required to support a conviction for kidnapping must be more than "slight." *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008).[2] Per *Garza*, we assess four factors to determine whether the evidence of asportation is sufficient to sustain a kidnapping conviction: (1) the duration of the movement; (2) whether the movement occurred during the commission of a crime other than kidnapping; (3) whether the movement was an inherent part of that other crime and "(4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense." (Citation and footnote omitted.)

In this case, pretermitting whether the act of knocking the victim from his bed and dragging him into the living room is sufficient asportation, the act of loading the victim into the back of a pickup truck and driving him to a different location is more than sufficient to sustain the finding of guilt, considering the *Garza* factors. The movement was of more than minimal duration, was not an inherent part of the assault and battery charges, and created additional danger to the victim by further isolating him and enhancing Rouse's control over him. See *Henderson v. State*, 285 Ga. 240, 244 (5) (675 SE2d 28) (2009). Additionally, sufficient evidence established that Wilkinson was a party to the crime of kidnapping, including the victim's testimony that Wilkinson helped Rouse load the victim into the truck at Wilkinson's house.

As to the second element of kidnapping with bodily injury, "[e]vidence of any physical injury, however slight, satisfies the bodily injury element necessary to establish kidnapping with bodily injury." *Nelson v. State*, 278 Ga. App. 548, 551 (3) (629 SE2d 410) (2006). Here, the victim suffered many injuries in addition to those used up by the simple battery, aggravated assault, and aggravated battery convictions, such as the rope burns around his neck from being hogtied. See *Brown v. State*, 224 Ga. App. 241, 242 (1) (480 SE2d 276) (1997). Any rational trier of fact could have found beyond a reasonable doubt that Wilkinson was a party to the crime of kidnapping

---

[2] The legislature subsequently amended the kidnapping statute to provide that slight movement *is* sufficient to prove kidnapping as long as the movement was not incidental to another offense, then further defined what actions would not be incidental to another offense. This statute applies to crimes committed on or after the revised statute's effective date, July 1, 2009. OCGA § 1-3-4. The crime in this case occurred in April 2005, and therefore the standard set forth in *Garza* applies.

with bodily injury.

2. Wilkinson argues that all of the assault and battery charges merge into one count (Counts 3, 4, 5, and 6); that simple battery with a stick and aggravated assault with hands and feet merge (Counts 3 and 4); and that the two aggravated battery counts merge (Counts 5 and 6). We note that Wilkinson's arguments in this regard do not focus on the specifics of the charges at all, but after discussing the general law of merger he simply repeats in each of the three enumerations that "the offenses arose from the same conduct, were committed against the same victim, and the evidence used to convict defendant of Count[s 4, 5, and 6; or 4; or 6] was used up in establishing Defendant's conviction for Count [3 or 5]." This kind of rote "analysis" does little to assist the court.

Two or more convictions do not merge for sentencing purposes if each crime requires proof of a fact which the other does not. *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006). A single act may violate two statutes, and if each statute requires proof of an additional fact which the other does not, the defendant may be prosecuted and punished for each violation. Id.

Count 3 charged Wilkinson as party to the crime of aggravated assault on the victim by striking him with a bat in the shoulder and kneecap, and the jury convicted him of the lesser included offense of simple battery. Count 4 charged him with aggravated assault by using his hands and feet; Count 5 with aggravated battery for knocking out the victim's teeth and breaking his wrist and shoulder; and Count 6 with aggravated battery by causing burns to the victim's hands and ant bites. The evidence established an injury unique to each count. For example, Count 3 was proven by a broken kneecap; Count 4 by testimony Wilkinson kicked the back of the victim's legs; Count 5 by a broken shoulder and teeth; Count 6 by burns on the victim's hands and bites; and Count 7 by rope burns around the victim's neck.

These actions, although occurring sequentially, constituted separate offenses, as each was established by proof of different facts. *Malone v. State*, 226 Ga. App. 185, 187 (2) (486 SE2d 57) (1997). "Thus, the evidence in this case does not demonstrate that the aggravated assault and the aggravated battery were based on the same conduct within the contemplation of OCGA § 16-1-7, with the result that the separate convictions for these offenses may stand." (Citations and punctuation omitted.) Id. See also *Davis v. State*, 281 Ga. 871, 873-874 (2), (3) (644 SE2d 113) (2007); *Brown v. State*, 275 Ga. App. 99, 106 (5) (619 SE2d 789) (2005).

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED JUNE 3, 2009.

*Richard M. Darden*, for appellant.

*Spencer Lawton, Jr., District Attorney, Thomas M. Cerbone, Margaret E. Heap, Assistant District Attorneys*, for appellee.