## A11A0397. REYNOLDS v. THE STATE.
### (714 SE2d 621)

BARNES, Presiding Judge.

Following the denial of his motion for new trial, Dennis Ivan Reynolds appeals his convictions for aggravated assault, aggravated battery, kidnapping with bodily injury and possession of a firearm or knife during the commission of a crime. Reynolds contends that the evidence was insufficient, and that the trial court erred by failing to merge the aggravated assault, aggravated battery, and kidnapping with bodily injury offenses. Upon our review, we affirm.

When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State,* 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence shows that on the night of April 29,

---

1998, Reynolds was visiting the victim when she told him that she wanted to end their relationship of approximately four years. He became upset, went to the garage, and returned with a shotgun that he pointed at the victim and threatened to kill her. Reynolds cut the telephone line when the victim attempted to call 911, and also refused to let the victim leave. The victim testified that when she tried to leave the house, she was injured, bleeding, and frightened, but did not remember much about the attack because she was "in shock." As she approached the front door, Reynolds knocked her down, and she fell face-down into a coffee table. Blood poured from the victim's face, and she thought that "he had knocked [her] eye ball out because [she] couldn't see." Reynolds followed the victim into her bedroom, where she had run, and as the victim kneeled on her hands and knees, stood over her and threatened to kill her, himself, and her children. Reynolds then forced the victim to walk through a trail to a wooded area behind her house, where he again had her get on her hands and knees as he sat nearby holding the gun. Reynolds again threatened to kill himself, but the victim feared that he was planning to kill her while they were in the deserted area.

After a while, Reynolds forced the victim, who was bloodied and lightheaded, to get up and led her back to her house, where he forced her at gunpoint to swallow several unidentified pills, telling her that she was going to "kill [herself] tonight." The victim testified that she was not positive, but believed they were prescription sleeping pills. Reynolds then told her that he was going to get a souvenir and "started . . . cutting [her] hair all the way around" until he had a "long . . . ponytail." Reynolds continued to hold the gun on the victim, and after he made her lie down on the couch, she fell asleep. He woke her and gave her a glass containing a cloudy liquid, which he said was pain medication and forced the victim to drink it. At some point, the victim either went back to sleep or lost consciousness; when she awakened several hours later, Reynolds was gone and she went to a neighbor's house for help.

When police responded, they found blood throughout the house, including "quite a bit" on a coffee table, a blood smear on the microwave, drops and smears of blood on the carpet, and drops along the dresser top in the master bedroom. According to an officer, "there were hand prints smeared in the blood [on] the hallway walls where someone had gone up and down the hallway, . . . and also on the carpet, on the tile, on the doorways, [and] through the doors." There was also blood on several items of clothing, and some of the victim's hair was scattered in the room. Police discovered a note that Reynolds had written apologizing to the victim and saying that he was going to kill himself. The victim told police about the assault, including that Reynolds had repeatedly beaten her with his fists, and

slammed her into the walls and furniture. Her treating doctor at the emergency room testified that "it was difficult to count the fractures" to her face, and characterized her injury as a "smash injury," which required extensive surgery to reconstruct her damaged face. The doctor testified that the "screws and wires" used to repair the victim's face were permanent. He further testified that it was impossible for the injury to have been caused by a single blow.

1. Contrary to Reynolds' argument otherwise, we find the evidence sufficient to sustain his convictions for aggravated battery and aggravated assault. Under OCGA § 16-5-24 (a), a person commits the offense of aggravated battery when he maliciously causes bodily harm to another by rendering a member of the victim's body useless. The disfigurement of the victim's face met this element of the crime. See generally *Cook v. State*, 255 Ga. 565, 578 (16) (340 SE2d 843) (1986). Likewise, the evidence also supports Reynolds' conviction for aggravated assault. See OCGA § 16-5-21 (a) (2) (a person commits the offense of aggravated assault when he or she assaults with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury).

Reynolds contends that the State failed to introduce evidence sufficient to show asportation under the standard announced in *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008).[1] We do not agree.

The standard in *Garza* provides for the assessment of four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

(Citations omitted.) *Henderson v. State*, 285 Ga. 240, 244-245 (5) (675 SE2d 28) (2009). Not all of the four factors must favor the state in order to prove asportation. See *Abernathy v. State*, 299 Ga. App. 897, 900 (1) (685 SE2d 734) (2009).

Here, Reynolds forced the severely injured victim at gunpoint to

---

[1] We note initially that the 2009 amendment to OCGA § 16-5-40 to provide that slight movement is sufficient evidence of asportation, as long as the movement is not incidental to another offense, applies to crimes committed on or after the amended statute's effective date of July 1, 2009, and, therefore, is not applicable in the present case. See OCGA § 16-5-40 (b) (1) (2009); *Wilkinson v. State*, 298 Ga. App. 190, 195 (1) (d), n. 2 (679 SE2d 766) (2009).

leave her house, walk through a trail behind the house to a secluded wooded area, made her kneel on the ground on her hands and knees, and for a significant period of time threatened to kill her or her children as she begged for her life. His actions were not a necessary or inherent part of the assault or battery. Reynolds' actions further isolated the victim, thereby creating additional danger to her and removing her from the possibility of rescue or escape, and reinforced his control over her. Under these circumstances, the movement at issue was sufficient evidence of asportation as contemplated by *Garza*.

2. Reynolds contends the trial court should have merged the aggravated assault, aggravated battery, and kidnapping with serious injury counts.

Reynolds was charged with aggravated battery for "intentionally and maliciously" causing "bodily harm to . . . [the victim], by depriving [the victim] of a member of [her] body, by rendering . . . [it] useless, or by seriously disfiguring" her by "beating her face." He was charged with aggravated assault for making "an assault upon the person of [the victim] with a firearm, a deadly weapon or object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." The kidnapping with bodily injury count charged that Reynolds did "abduct or steal away" the victim and during the crime "cause[d] bodily injury" to the victim "by beating her about the face and/or body."

OCGA § 16-1-6 (1) states that a crime is "included in a crime charged in the indictment or accusation" when "[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of [the other crime]" or if the included crime "differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person . . . or a lesser kind of culpability suffices to establish its commission." Id. at (2). "[T]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (Punctuation and footnote omitted.) *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006).

With respect to the aggravated assault and aggravated battery count, whereas the aggravated assault required proof that Reynolds assaulted the victim using a deadly weapon, aggravated battery required proof that he maliciously caused bodily harm to the victim by rendering a member of her body useless. Likewise, the kidnapping count required asportation of the victim. The offenses were distinct,

with each requiring proof of a fact which the other did not; thus, the crimes did not merge legally or factually. See *Goss v. State*, 289 Ga. App. 734, 738 (3) (a) (658 SE2d 168) (2008).

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED JUNE 24, 2011 —
RECONSIDERATION DENIED JULY 22, 2011.

*Jeffrey L. Grube*, for appellant.

*Kelly R. Burke, District Attorney, Katherine K. Lumsden, T. Rabb Wilkerson III, Venita S. McCoy, Assistant District Attorneys*, for appellee.